# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 4, 2013 Session

## ROGER DAVID HYMAN v.
## BOARD OF PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Knox County**
No. 35512    Jon Kerry Blackwood, Senior Judge

---

**No. E2012-02091-SC-R3-BP - Filed March 31, 2014**

---

A hearing panel of the Board of Professional Responsibility determined that a Knoxville attorney violated a number of the Rules of Professional Conduct and recommended his suspension from the practice of law for six months and his attendance at six hours of ethics and professionalism courses in addition to those mandated by Tennessee Supreme Court Rule 21, section 3.01. The attorney timely filed a petition for certiorari in the Circuit Court for Knox County under Tennessee Supreme Court Rule 9, section 1.3. In his petition, the attorney alleged that the hearing panel improperly considered his disciplinary history and that his six-month suspension was excessive. The circuit court affirmed the judgment of the hearing panel. After a thorough review of the record, we affirm.

**Tenn. Sup. Ct. R. 9, § 1.3 Direct Appeal;**
**Judgment of the Circuit Court Affirmed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

C. Phillip Carter, M.D., Knoxville, Tennessee, for the appellant, Roger David Hyman.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

## I. Facts and Procedural History

Roger David Hyman received a license to practice law in Tennessee in 1984. He worked in the Tennessee Attorney General's office until the mid-1990s when he opened a private practice in Knox County, Tennessee.

This case arises from a petition for discipline filed against Mr. Hyman by the Board of Professional Responsibility ("the Board") on May 12, 2010. The petition combined two unrelated complaints. Mr. Hyman denied the allegations of misconduct contained in the petition.

A hearing panel convened on May 23, 2011. After a number of witnesses testified, a member of the hearing panel determined that he had a conflict of interest because he had previously represented one of the Board's witnesses. Mr. Hyman's request for a mistrial was denied. The hearing panel agreed, however, to continue the proceedings until a later date, and the Chair of the Board assigned a new hearing panel.

The new hearing panel held a hearing on November 29 and 30, 2011. Before the hearing began, Mr. Hyman objected to the hearing panel's composition, arguing that he was denied due process because he was unable to participate in the selection of the hearing panel. Mr. Hyman did not allege bias on the part of any hearing panel member and acknowledged that the hearing panel was chosen in accordance with Tennessee Supreme Court Rule 9.[1] The Board presented a number of witnesses, and the following facts were revealed.

### Tanner Complaint

On February 13, 2006, Mr. Hyman filed an amended complaint for divorce on behalf of his client, Cory Kristy, who was married to Tamatha Tanner. The parties had executed a prenuptial agreement and had few marital assets. Mr. Kristy's only significant pre-marital asset consisted of an assortment of sports cards and a collection of "Transformer" memorabilia, which Mr. Kristy maintained were in Ms. Tanner's possession or had been lost or otherwise disposed of by Ms. Tanner. Ms. Tanner denied possessing, concealing, or disposing of Mr. Kristy's property.

---

[1] Effective January 1, 2014, this Court made comprehensive changes to Rule 9. The events described in this opinion, however, occurred prior to the effective date of our Rule change. References to Rule 9 in this opinion are to the version in effect at the time of Mr. Hyman's disciplinary hearing.

After being served with the amended complaint, Ms. Tanner hired attorney William Davis to represent her. Mr. Davis notified Mr. Hyman by letter dated June 9, 2006, that he represented Ms. Tanner and attached a copy of the notice of appearance he had filed in the trial court. On June 15, 2006, Mr. Hyman responded to Mr. Davis' letter and enclosed a proposed marital dissolution agreement.

Mr. Davis and Mr. Hyman continued to correspond concerning the case. On July 17, 2006, Mr. Hyman filed a motion for default judgment, which contained a certification that he had mailed a copy of the motion to Mr. Davis as Ms. Tanner's "putative attorney (although no Answer nor Appearance has been filed)." Contrary to his statement in the certification, Mr. Hyman did not mail a copy of the motion to Mr. Davis but instead mailed a copy of the motion directly to Ms. Tanner. Ms. Tanner contacted Mr. Davis when she received the motion. Mr. Davis in turn wrote to Mr. Hyman, admonishing him for directly contacting his client.

Throughout the summer of 2006, Mr. Hyman repeatedly requested permission to inspect Ms. Tanner's home for Mr. Kristy's personal property. Mr. Davis initially declined to schedule a home inspection because Ms. Tanner's infant son suffered from health issues relating to his premature birth. Ultimately, however, the trial court ordered an inspection of Ms. Tanner's home. Mr. Davis wrote to Mr. Hyman in advance of the home inspection to alert him of the child's health issues, enclosing written materials from the child's pediatrician explaining that the child had a heightened risk of infection. Mr. Davis therefore requested that the participants at the home inspection apply liquid hand sanitizer prior to entering Ms. Tanner's home. When the parties arrived for the inspection, however, Mr. Hyman refused to use the hand sanitizer, calling it "snake oil." Mr. Davis threatened to end the inspection unless Mr. Hyman complied with Ms. Tanner's request, and Mr. Hyman eventually applied the hand sanitizer.

While deposing Ms. Tanner during litigation, Mr. Hyman repeatedly called her a "liar and a thief," threatened her with the possibility of incarceration, and twice asked her if English was her "native language." The deposition culminated in the following exchange:

Mr. Hyman: So, according to your attorney, who is not facing a jail cell door, but you are if you're found in contempt, you are not going to answer my question?

Mr. Davis: She is not going to answer your question.

Mr. Hyman: See, he is not going to court – to jail. Now, tell us about –

* * * *

Mr. Davis:      Nobody is – I would ask you not to make threats like that to my client.  I would ask you to limit your questions to our stipulation.

Ms. Tanner:    I need a break.

Mr. Davis:      There is nobody going to jail.

* * * *

Mr. Davis:      We're taking a break.

Mr. Hyman:    No, we're not taking a break.

Mr. Davis:      I'm taking a break.

Ms. Tanner:    I'd like to take a break.

Mr. Hyman:    We're over.

* * * *

Mr. Hyman:    No, we're not going to take it up with the judge.  I will notice you. If you file an objection, then that's your prerogative. Okay?  And I'll be seeking attorneys fees and costs and everything else.

Mr. Davis:      Good.  Take it up with the judge.

Mr. Hyman:    You're protecting a liar and a thief.

Mr. Kristy was granted a divorce in late 2007.  On March 11, 2008, however, Mr. Hyman filed a replevin action on Mr. Kristy's behalf seeking either the return of the sports cards and "Transformer" collection or $1,000,000 in damages.[2]  Six days after filing suit, Mr. Hyman filed an abstract of suit and notice of lien lis pendens in the Knox County Register of Deeds, which asserted a $1,000,000 claim against Ms. Tanner's property.  Ms. Tanner

---

[2] Mr. Hyman testified at the disciplinary hearing that he filed the replevin action "on the direction of" the trial court in the divorce proceedings.

again retained Mr. Davis, who eventually filed a motion to release the lien lis pendens. After conducting a hearing, the trial court entered an order declaring Mr. Hyman's lien void and ordering its release from the land records.

## Korten Complaint

On March 26, 2008, Fred and Diane Korten hired Mr. Hyman to represent them in an action filed by David Sallas in the Circuit Court for Blount County, Tennessee. Mr. Sallas, the Kortens' general contractor, alleged that the Kortens failed to pay him the amount required by the contract for the construction of the Kortens' home in Maryville, Tennessee. The Kortens filed a counterclaim against Mr. Sallas, alleging a number of construction defects. During the initial stages of discovery, the Kortens provided Mr. Hyman with a copy of a DVD recording they created during the construction of their home to document the alleged construction defects.[3] Although the DVD contained audio of the Kortens as well as the video recording, Mr. Hyman advised the Kortens to remove the audio portion of the recording because he believed it constituted inadmissible hearsay. The Kortens hired someone to remove the audio, and Mr. Hyman subsequently provided Mr. Sallas' attorney, Keith Alley, with a copy of the DVD from which the sound had been removed.

After viewing the DVD, Mr. Alley requested that Mr. Hyman provide a DVD with the original audio recording. Mr. Hyman refused, maintaining that the audio portion of the DVD was inadmissible. Mr. Alley filed a motion to compel and for sanctions, which was set for hearing on October 3, 2008. On September 22, 2008, Mr. Hyman and Mr. Alley ostensibly resolved the discovery dispute by telephone, and Mr. Alley forwarded a proposed order to Mr. Hyman for his signature two days later. In the letter accompanying the proposed order, Mr. Alley stated that he would proceed with his motion on October 3, 2008, unless Mr. Hyman returned a signed copy of the proposed order by October 2, 2008. Mr. Hyman failed to provide Mr. Alley with a signed copy prior to the hearing.

Mr. Alley attempted unsuccessfully to contact Mr. Hyman at his office on the morning of the hearing, and Mr. Alley appeared in court to argue his motion. Neither Mr. Hyman nor the Kortens, however, were present. When Mr. Hyman's assistant informed him that Mr. Alley was in court on the motion, Mr. Hyman immediately called Mr. Alley's office and spoke with Mr. Alley's assistant, Kimberly Gage. Mr. Hyman shouted at Ms. Gage repeatedly and threatened to report Mr. Alley to the Board. Mr. Hyman also spoke with Melanie Davis, an attorney in Mr. Alley's office, shouted at her throughout their conversation, and again threatened to report Mr. Alley to the Board.

---

[3] The DVD was not made an exhibit at the disciplinary hearing.

As the hearing proceeded without Mr. Hyman, Mr. Alley informed the trial court of his conversation with Mr. Hyman the prior week. The trial court granted Mr. Alley's motion to compel and entered an order reflecting the terms of the proposed order that Mr. Alley sent to Mr. Hyman on September 24, 2008. The trial court reserved the issue of sanctions until October 17, 2008, to allow Mr. Hyman sufficient time to appear.

Mr. Hyman filed a motion for sanctions on October 7, 2008, alleging that Mr. Alley improperly sought a hearing on his motion to compel. Mr. Hyman, however, withdrew his motion before the rescheduled hearing on Mr. Alley's motion for discovery sanctions. The trial court heard arguments on Mr. Alley's motion and on October 28, 2008, entered an order requiring the Kortens to pay $5,842.50 in sanctions within thirty days, finding that "there [was] no just reason for the Kortens and Attorney Hyman to have failed to appear in court on October 3, 2008."

On December 5, 2008, Mr. Alley filed a motion for contempt alleging that the Kortens had failed to pay the sanctions as required by the October 28, 2008 order. On the same day, Mr. Hyman filed a Notice of Interpleader and paid $5,842.50 to the court clerk. On December 15, 2008, the trial court found that "no just cause exists for the delay in paying the sum directly to [the plaintiff]." In January 2009, the Kortens discharged Mr. Hyman and retained substitute counsel.

In December 2009, now-deceased Blount County Circuit Court Judge William Dale Young was admitted to the hospital unexpectedly. Mr. Hyman was scheduled to appear before Judge Young the next morning. Mr. Hyman was unaware of Judge Young's unexpected hospitalization and did not learn that court proceedings had been cancelled until his arrival at the courthouse. Mr. Hyman became upset and confronted Amanda Nolen, Judge Young's administrative assistant, in her office. Although Ms. Nolen tried to explain to Mr. Hyman why court had been abruptly cancelled, Mr. Hyman became "extremely angry" and expressed his belief that Ms. Nolen was "picking on him" and that "[Judge Young's] office had a conspiracy against him." The court officer escorted Mr. Hyman from Ms. Nolen's office.[4]

---

[4] Mr. Hyman's inappropriate behavior toward Ms. Nolen in Judge Young's office occurred approximately eleven months after Mr. Hyman was discharged as the Kortens' attorney. This incident was not included in the Board's Petition for Discipline, and the Board first listed Ms. Nolen as a potential witness shortly before the disciplinary hearing on November 29, 2011. Although it appears to be an incident separate from the Kortens' case, Mr. Hyman did not object to the inclusion of Ms. Nolen's testimony, and this incident was therefore tried by the implied consent of the parties. See Tenn. R. Civ. P. 15.02 (stating that when "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"); see also Nevin v. Bd. of Prof'l

(continued...)

## Prior Disciplinary History

The Board introduced evidence concerning Mr. Hyman's prior disciplinary history. Mr. Hyman has been disciplined on five separate occasions since 1996. On March 18, 1996, Mr. Hyman was publicly censured after he willfully violated an order of protection. On March 19, 1997, Mr. Hyman was privately reprimanded for an alleged assault on an opposing party. Although the criminal charges against Mr. Hyman were dismissed, the Board nevertheless determined that Mr. Hyman's conduct warranted a private reprimand.

In December 1999, Mr. Hyman pleaded guilty to a petition for discipline alleging that he grabbed an opposing attorney's arm after a court hearing and blocked her exit from the courtroom. This Court subsequently suspended Mr. Hyman from the practice of law for thirty days, placed him on probation for one year, and required him to attend a year-long anger-management program.

On November 8, 2003, Mr. Hyman was privately reprimanded for failing to communicate with his client and for threatening his client's mother with an unfounded lawsuit. On November 8, 2006, Mr. Hyman received an informal admonition for threatening to report another attorney to the Board.

## Findings of the Hearing Panel

On December 12, 2011, the hearing panel filed a written judgment with the Board in compliance with Tennessee Supreme Court Rule 9. See Tenn. Sup. Ct. R. 9, § 8.3 (requiring the hearing panel to submit its written findings within fifteen days of the conclusion of the hearing). With respect to the Tanner complaint, the hearing panel found that Mr. Hyman violated the following Rules of Professional Conduct:

• Rule 4.2, "Communication with a Person Represented by Counsel," by directly communicating with Ms. Tanner, who Mr. Hyman knew was represented by counsel;

---

[4] (...continued)
Responsibility, 271 S.W.3d 648, 656 (Tenn. 2008) (finding no deprivation of due process when the attorney was disciplined for misconduct that was proven during the hearing but was not alleged in the Board's petition for discipline).

- Rule 4.4(a)[5] by intending to disrupt the home inspection and related proceedings with no substantial purpose other than to embarrass and burden Ms. Tanner and Mr. Davis;

- Rule 3.5(e)[6] by threatening Ms. Tanner during her deposition; and

- Rules 3.1[7] and 4.4(a) by filing a notice of lien lis pendens against Ms. Tanner that was later declared void.

---

[5] Rule 4.4(a) provides that a lawyer shall not:

(1) use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person; or
(2) threaten to present a criminal or lawyer disciplinary charge for the purpose of obtaining an advantage in a civil matter.

Tenn. Sup. Ct. R. 8, RPC 4.4(a)(1)-(2).

[6] Rule 3.5(e) prohibits a lawyer from "engag[ing] in conduct intended to disrupt a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.5(e). See also Tenn. Sup. Ct. R. 8, RPC 3.5, cmt. 6 ("[T]he duty to refrain from disruptive conduct applies to any proceeding of a tribunal, including a deposition.").

[7] Rule 3.1 states:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

Tenn. Sup. Ct. R. 8, RPC 3.1.

In addition to each of the above violations, the hearing panel determined that Mr. Hyman violated Rules 8.4(a) and 8.4(d).[8] The hearing panel did not, however, find that Mr. Hyman violated Rule 3.4, "Fairness to Opposing Party and Counsel."[9]

---

[8] Rule 8.4 states in pertinent part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
. . . .
(d) engage in conduct that is prejudicial to the administration of justice.

Tenn. Sup. Ct. R. 8, RPC 8.4(a), (d).

[9] Rule 3.4 states that a lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act; or
(b) falsify evidence, counsel or assist a witness to offer false or misleading testimony; or
(c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; or
(d) in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party; or
(e) in trial,
    (1) allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence; or
    (2) assert personal knowledge of facts in issue except when testifying as a witness; or
    (3) state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
    (1) the person is a relative or an employee or other agent of a client; and
    (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information; or
(g) request or assist any person to take action that will render the person unavailable to appear as a witness by way of a deposition or at trial; or
(h) offer an inducement to a witness that is prohibited by law; or pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent on the content of his or her testimony or the outcome of the case. A lawyer may advance, guarantee, or acquiesce in payment of:
    (1) expenses reasonably incurred by a witness in attending or testifying;
    (2) reasonable compensation to a witness for that witness's loss of time in attending or testifying; or
    (3) reasonable fee for the professional services of an expert witness.

(continued...)

With respect to the Korten complaint, the hearing panel determined that Mr. Hyman violated:

• Rules 3.4 and 8.4(d) by directing the Kortens to remove the audio from the DVD;

• Rule 3.4(c), which prohibits attorneys from "knowingly disobey[ing] an obligation under the rules of a tribunal";

• Rules 8.4(a) and 8.4(d) by failing to appear at the hearing on Mr. Alley's motion to compel;

• Rules 3.4(c), 8.4(a), and 8.4(d) by his knowing failure to pay in a timely fashion the sanctions required by the trial court's October 28, 2008 order; and

• Rules 4.4(a), 8.4(a), and 8.4(d) by interacting with Mr. Alley, Ms. Davis, Ms. Gage, and Ms. Nolen with the intent to disrupt the proceedings and without any substantial purpose other than to embarrass or burden them.

The hearing panel concluded, however, that Mr. Hyman did not violate Rules 1.2, "Scope of Representation and Allocation of Authority Between Client and Lawyer"; 1.3, "Diligence"; 1.4, "Communication"; or 3.5(e).

In determining the appropriate sanction, the hearing panel considered the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") and found that Mr. Hyman's actions "pose[d] a serious threat to the orderly administration of justice and the governance of the legal profession." Although the hearing panel acknowledged that some of Mr. Hyman's violations–his direct contact with Ms. Tanner and his interactions with the Kortens and with Mr. Alley and his staff–were "less egregious and likely worthy of only a private or public reprimand," the hearing panel concluded that Mr. Hyman's other violations evidenced a "complete disregard for the Rules [of Professional Conduct]." Additionally, the hearing panel found the existence of the following four aggravating circumstances: (1) Mr. Hyman's prior disciplinary offenses; (2) Mr. Hyman's pattern of misconduct; (3) the number of offenses in the current petition; and (4) Mr. Hyman's substantial experience in the practice of law. In mitigation, the hearing panel considered the premature birth of Mr. Hyman's daughter and the sleep deprivation that stemmed from caring for his daughter.

---

[9] (...continued)

Tenn. Sup. Ct. R. 8, RPC 3.4.

The hearing panel stated that it felt "compelled to mete a meaningful penalty" because Mr. Hyman "has not benefitted from his previous discipline and . . . continues to make the same mistakes." Accordingly, the hearing panel concluded that Mr. Hyman should be suspended from the practice of law for six months and ordered that he attend six hours of ethics and professionalism courses in addition to his Continuing Legal Education ethics requirements. See Tenn. Sup. Ct. R. 21, § 3.01 (requiring attorneys licensed in Tennessee to complete three hours of ethics and professionalism course work annually).

On February 9, 2012, Mr. Hyman timely sought judicial review of the hearing panel's judgment by filing a petition for certiorari in the Circuit Court for Knox County. See Tenn. Sup. Ct. R. 9, § 1.3 (providing that a disciplined attorney may seek review of the hearing panel's judgment by filing a petition for certiorari in accordance with Tennessee Code Annotated sections 27-9-101 to -114). Mr. Hyman argued that his inability to participate in the selection of the hearing panel members deprived him of his due process rights under the United States and Tennessee Constitutions. Mr. Hyman also argued that the hearing panel abused its discretion by admitting evidence of his prior discipline, that the hearing was generally conducted in an arbitrary and capricious manner, that the hearing panel's findings of fact were not supported by substantial and material evidence, and that a six-month suspension was excessive.

After hearing arguments from counsel, the circuit court entered written findings of fact and conclusions of law on August 12, 2012. The circuit court considered the entire record of the disciplinary hearing and affirmed the hearing panel's judgment. In doing so, the circuit court noted that Mr. Hyman "seems incapable of controlling his anger" and that Mr. Hyman's "explanations for his behavior are disingenuous and lame." Mr. Hyman has appealed the circuit court's denial of his petition for certiorari.

## II. Analysis

This Court has the inherent power to regulate and supervise the practice of law in Tennessee. In re Burson, 909 S.W.2d 768, 772-73 (Tenn. 1995). Accordingly, we promulgated Tennessee Supreme Court Rule 9, which outlines the attorney disciplinary process. See Brown v. Bd. of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000). Tennessee Supreme Court Rule 9, section 1.3 provides as follows:

> The court may reverse or modify the [hearing panel's] decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion

or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Absent these limited circumstances, the hearing panel's decision should not be disturbed on appeal. Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 621-22 (Tenn. 2013). Moreover, the reviewing court "shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." Tenn. Sup. Ct. R. 9, § 1.3. Giving due deference to the hearing panel, we must examine the record in this case to determine if Mr. Hyman has established any of the above as grounds for relief.

## A. Due Process

Mr. Hyman first contends that the method for selecting hearing panel members deprives him of his right to due process under the United States and Tennessee Constitutions. See U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; Tenn. Const. art. 1, § 8. Specifically, Mr. Hyman argues that he should be permitted to question the hearing panel members prior to the hearing to explore any potential biases that the hearing panel members may have. Mr. Hyman, however, does not allege that any of the hearing panel members were actually biased.

Attorney disciplinary proceedings are "quasi-criminal" in nature. Moncier v. Bd. of Prof'l Responsibility, 406 S.W.3d 139, 155 (Tenn. 2013) (citing In re Ruffalo, 390 U.S. 544, 551 (1968)). Accordingly, attorneys who are subject to discipline are entitled to procedural due process, which includes notice of the alleged misconduct and an opportunity to be heard. Moncier, 406 S.W.3d at 156. An attorney disciplinary proceeding does not, however, give rise to "the full panoply of [due process] rights afforded to an accused in a criminal case." Id. (quoting People v. Harfmann, 638 P.2d 745, 747 (Colo. 1981)).

Nevertheless, this Court has promulgated rules that grant a number of additional rights to attorneys in disciplinary matters beyond those constitutionally required. For example, attorneys subject to discipline in Tennessee have the right to be represented by counsel, to cross-examine witnesses called against them, and to present evidence on their own behalf. Tenn. Sup. Ct. R. 9, § 8.2. Similarly, attorneys are permitted to appeal the hearing panel's decision. Tenn. Sup. Ct. R. 9, § 1.3; see also Threadgill v. Bd. of Prof'l Responsibility, 299 S.W.3d 792, 813 (Tenn. 2009) (recognizing that Rule 9 satisfies the requirements of due process by providing review comparable to that of the Uniform Administrative Procedures Act, which allows for chancery court review of administrative agency decisions), overruled on other grounds by Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 28 (Tenn. 2012).

Noticeably absent, however, from the list of rights afforded attorneys in disciplinary proceedings is the right to participate in the selection of the hearing panel. Rather than allowing attorneys to participate in the selection of the hearing panel, we promulgated Rule 9, section 8.2, which vests the power of appointment in the Chair of the Board and provides in pertinent part:

> Following the service of the answer or upon failure to answer, the matter shall be assigned by the Chair to a hearing panel. In assigning the members of the hearing panel, the Chair shall select them on a rotating basis from the members of the district committee in the district in which the respondent practices law; if there is an insufficient number of committee members in that district who are able to serve on the hearing panel, the Chair may appoint one or more members from the district committee of an adjoining district to serve on the panel.

Tenn. Sup. Ct. R. 9, § 8.2.[10] Once assigned, however, hearing panel members are compelled to recuse themselves if "a judge, similarly situated, would have to recuse himself or herself." Tenn. Sup. Ct. R. 9, § 6.5. See generally Moncier, 406 S.W.3d at 160 (discussing the due process requirements applicable to hearing panel members). The initial hearing panel in this case clearly acknowledged the obligations imposed on them by Rule 9, section 6.5, as evidenced by one member's recusal after he determined that he had a conflict of interest. Mr. Hyman was subsequently granted a new hearing before a new hearing panel, and he does not allege any bias on the part of the new hearing panel members. Mr. Hyman also acknowledges that the new hearing panel was selected in accordance with Rule 9.

In sum, our current disciplinary framework provides adequate protection to attorneys who are accused of professional misconduct and is not "in violation of constitutional or statutory provisions." Tenn. Sup. Ct. R. 9, § 1.3. To that end, we see no compelling reason to depart from our established method for selecting hearing panel members.

## B. Prior Sanctions

Mr. Hyman next contends that the hearing panel erred in admitting evidence of his disciplinary history because the Board introduced this evidence to create "a presumption of guilt" against him. Accordingly, Mr. Hyman argues that the admission of evidence of his prior discipline was unduly prejudicial under Rule 404(b) of the Tennessee Rules of

---

[10] Although the Board may recommend attorneys for appointment to district committees, this Court retains the exclusive power to appoint district committee members. See Tenn. Sup. Ct. R. 9, § 6.1 ("The Supreme Court shall appoint one district committee within each disciplinary district.").

-13-

Evidence and therefore should have been excluded. See Tenn. R. Evid. 404(b) (prohibiting the introduction of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity with the character trait"). The Board maintains, however, that Mr. Hyman's disciplinary record was introduced only for the hearing panel to consider as proof of an aggravating circumstance when determining the appropriate sanction to impose. We agree.

Tennessee Supreme Court Rule 9, section 8.2 permits the Board to introduce evidence of an attorney's prior disciplinary record, including private discipline, as proof of an aggravating circumstance as long as the evidence is "otherwise admissible under the Tennessee Rules of Evidence." Similarly, Rule 9, section 8.4 requires the hearing panel to refer to the ABA Standards when determining the appropriate sanction to impose. Much like Rule 9, section 8.2, the ABA Standards list an attorney's "prior disciplinary offenses" as a potential basis for increasing an attorney's sanction beyond the presumptive sanction. See ABA Standard 9.22(a).

Our review of the record reveals that the Board introduced Mr. Hyman's disciplinary history as proof of an aggravating circumstance. Rule 9, section 8.2 specifically permits the Board to introduce evidence of prior discipline to determine the appropriate sanction to impose. Here, the hearing panel considered Mr. Hyman's prior discipline for the sole purpose of determining whether an aggravating circumstance existed to justify increasing Mr. Hyman's presumptive sanction. Therefore, the hearing panel did not abuse its discretion by considering Mr. Hyman's prior discipline. See Tenn. Sup. Ct. R. 9, § 1.3. (permitting the reviewing court to reverse or modify the hearing panel's decision if it was "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion").

Mr. Hyman also argues that evidence of his private reprimand in 1997 should have been excluded at the hearing because the underlying assault charge on which his discipline was based had been dismissed. We are unpersuaded by Mr. Hyman's argument because his private reprimand did not arise from a conviction for assault. Instead, the Board's written reprimand clearly states that "[a]lthough the assault matter was dismissed and [Mr. Hyman] denies actually touching the woman, [Mr. Hyman] admits that he regrettably began to shout at [the victim] after she began to shout at [him]." We therefore decline to grant relief on this basis.

## C. ABA Standards for Imposing Lawyer Sanctions

Mr. Hyman's final argument on appeal is that the hearing panel misapplied the ABA Standards. In essence, Mr. Hyman argues that the hearing panel arbitrarily imposed a six-month suspension. See Tenn. R. Sup. Ct. 9, § 1.3 (stating the bases on which a reviewing court may reverse or modify the hearing panel's judgment).

To determine the appropriate discipline in a given case, the hearing panel must refer to the ABA Standards. See Tenn. Sup. Ct. R. 9, § 8.4. The ABA Standards, however, are merely "guidepost[s]" and are not rigid rules that dictate a particular outcome. See Lockett, 380 S.W.3d at 26; Maddux, 409 S.W.3d at 624-25; see also ABA Standards, Theoretical Framework ("The ultimate sanction imposed will depend on the presence of any aggravating or mitigating factors in that particular situation."). Under the ABA Standards, the hearing panel should consider the following four questions:

> (1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)[;]

> (2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)[;]

> (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?)[;] and

> (4) Are there any aggravating or mitigating circumstances?

ABA Standards, Theoretical Framework.

*Applicable Standards*

Stating that Mr. Hyman's misconduct "pose[d] a serious threat to the orderly administration of justice and the governance of the legal profession," the hearing panel applied the ABA framework to conclude that Mr. Hyman's misconduct represented, among other things, a breach of his duties to the legal system. Accordingly, the hearing panel cited ABA Standard 6.22, which states that "[s]uspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal

proceeding."[11]  Mr. Hyman argues, however, that the hearing panel erroneously concluded that he "knowingly" violated the October 28, 2008 order by his late payment of the sanctions, contending instead that the proof merely reflects that he acted negligently.  The ABA Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."  ABA Standards, Black Letter Rules, Definitions.  At the disciplinary hearing, Mr. Hyman testified that he was aware of the thirty-day deadline for paying the sanctions and admitted that the sanctions were paid after that deadline.  Therefore, the hearing panel's conclusion that Mr. Hyman knowingly violated the court's discovery order is supported by substantial and material evidence, and we agree with the hearing panel's conclusion that ABA Standard 6.22 applies.

The hearing panel also cited ABA Standard 3.2 as applying to this case.[12]  The record reveals, however, that the Board asserted the applicability of ABA Standard 6.32 in its Pretrial Brief and in its closing statement at the disciplinary hearing.  Neither party has addressed this discrepancy, and we therefore assume that the hearing panel's intended reference was to ABA Standard 6.32, not to ABA Standard 3.2, which does not exist.  ABA Standard 6.32 provides for suspension "when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding."  To that end, Mr. Hyman's direct communication with Ms. Tanner, whom he knew to be represented by counsel, clearly implicates ABA Standard 6.32, and the hearing panel's application of this standard is therefore supported by substantial and material evidence.

The hearing panel also cited ABA Standard 8.2, which states that "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."  Mr. Hyman's disciplinary history clearly reflects that he has been disciplined on a number of prior occasions for "the same or similar misconduct."  The hearing panel's conclusion that ABA Standard 8.2 applies is therefore supported by substantial and material evidence.

_____

[11] ABA Standard 6.22 is a subsection of ABA Standard 6.2, which provides the presumptive sanctions for cases involving the "failure to obey any obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

[12] The hearing panel's written judgment states without explanation that "[t]he ABA Standards applicable to this case are as follows: 6.22, 3.2, 7.2, and 8.2."  The circuit court did not make specific reference to these standards on appeal.

-16-

Finally, the hearing panel also cited ABA Standard 7.2 in its Conclusions of Law. ABA Standard 7.2 provides for suspension "when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Standing alone, this Standard appears to apply. ABA Standard 7.2, however, is a subsection of ABA Standard 7.0, which applies to "cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from representation, or failure to report professional misconduct." The conduct that triggers ABA Standard 7.0 is not alleged in Mr. Hyman's case, and the sanction set forth in ABA Standard 7.2 is therefore inapplicable.[13]

Notwithstanding the hearing panel's citation to ABA Standard 7.2, Mr. Hyman's six-month suspension is supported by substantial and material evidence. See Tenn. Sup. Ct. R. 9, § 1.3. Again, the hearing panel properly relied on ABA Standards 6.22, 6.32, and 8.2, all of which recommend suspension as the appropriate sanction. Moreover, the ABA Standards provide that "[g]enerally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years." ABA Standard 2.3. But see Tenn. Sup. Ct. R. 9, § 4.2 ("No suspension shall be ordered for a specific period less than thirty days or in excess of five years."). The hearing panel's findings are supported by substantial and material evidence, and we therefore affirm the hearing panel's conclusion that the ABA Standards support suspending Mr. Hyman from the practice of law for six months.

*Aggravating and Mitigating Circumstances*

After the hearing panel determines the appropriate baseline sanction, the hearing panel should also consider any aggravating or mitigating circumstances that may justify an increase or decrease of the baseline sanction. See ABA Standard 9.1 ("[A]ggravating and mitigating circumstances may be considered in deciding what sanction to impose.");[14] see also Lockett,

---

[13] We observe that the Kortens' complaint filed with the Board does allege, among other things, that Mr. Hyman charged excessive fees while representing them, which would support the use of ABA Standard 7.0 in this case. The Board, however, did not allege this conduct in its petition and did not introduce evidence that would support these actions as a basis for discipline under ABA Standard 7.0. Nevertheless, Disciplinary Counsel argued the applicability of ABA Standard 7.2 in its Pretrial Brief and at the hearing.

[14] The ABA Standards provide the following aggravating factors:

(a) prior disciplinary offenses;

(continued...)

380 S.W.3d at 28 (holding that the ABA Standards' list of aggravating and mitigating circumstances is "illustrative rather than exclusive").

The hearing panel found the following four aggravating circumstances: (1) Mr. Hyman's prior disciplinary offenses; (2) Mr. Hyman's pattern of misconduct; (3) the number of offenses in the current petition; and (4) Mr. Hyman's substantial experience in the practice

---

[14] (...continued)
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

ABA Standard 9.22.

The ABA Standards provide the following mitigating factors:

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
    (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
    (2) the chemical dependency or mental disability caused the misconduct;
    (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
    (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.

ABA Standard 9.32.

of law.  In mitigation, the hearing panel considered the premature birth of Mr. Hyman's daughter during the Korten litigation and the resulting loss of sleep that Mr. Hyman experienced during that time.  After a thorough review of "the transcript of the evidence before the hearing panel and its findings and judgment," we are unable to conclude that the hearing panel's consideration of these factors is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Sup. Ct. R. 9, § 1.3. We therefore affirm Mr. Hyman's six-month suspension from the practice of law.

## III. Conclusion

We affirm the judgment of the circuit court and the hearing panel suspending Mr. Hyman from the practice of law for six months.  Costs of this appeal are taxed to Roger David Hyman and his surety, for which execution may issue if necessary.

_____

JANICE M. HOLDER, JUSTICE