**The PEOPLE of the State of Colorado, Complainant,**

v.

**John A. ROEHL, Attorney-Respondent.**

**No. 82SA324.**

Supreme Court of Colorado,
En Banc.

Jan. 10, 1983.

Philip A. Harley, Disciplinary Prosecutor, Denver, for complainant.

No appearance for attorney-respondent.

QUINN, Justice.

A complaint was filed with the Grievance Committee charging John A. Roehl, the respondent, with using misleading and deceptive advertising in violation of DR2–101(A) and DR2–101(B)(14); gross carelessness in violation of C.R.C.P. 241(B)(5); and conduct that adversely reflects on his fitness to practice law in violation of DR1–102(A)(6). The hearing board of the Grievance Committee determined that the allegations of professional misconduct were proven by clear and convincing evidence. It recommended that the respondent be suspended from the practice of law for three years, that he take the necessary action mandated

by C.R.C.P. 241.21 after entry of the order of suspension, and that he not be reinstated except upon full compliance with the terms of C.R.C.P. 241.22. A hearing panel of the Grievance Committee approved these recommendations. We now adopt the findings of the Grievance Committee and approve the recommendations.

The respondent was admitted to practice law in Colorado in 1969. He has twice previously received letters of admonition, one for misconduct in advertising and the other for forming a relationship with a nonlawyer which had the effect of abetting the unauthorized practice of law. From December 1980 to May 1981 he regularly advertised his legal services in the classified section of the Rocky Mountain News. His ads typically listed seven specific services and the rates for each under the name "Rocky Mountain Law Offices of John Roehl." Heading the list in the advertisement was the line: "DIVORCE ... $65.00." The ads contained separate telephone numbers for offices in Aurora, West Denver, and Boulder. In fine print was a legend "Court Costs Add'l."

When prospective clients contacted the respondent they were informed that the $65.00 divorce fee did not include any representation in court. In addition, the clients were advised that the $65.00 fee was applicable only if the divorce was uncontested, there were no children born of the marriage, and no real estate was involved. What the fee did include were mimeographed forms of a joint petition for dissolution of marriage, a separation agreement, a decree of dissolution, and an instruction sheet. The respondent usually would spend approximately fifteen minutes with his clients, assisting them in filling out the forms and in advising them where to file the forms and how to obtain a hearing date.

The forms sold by the respondent contained significant inaccuracies. For example, the joint petition, the dissolution decree, and the separation agreement stated that "*Community Property* of the Parties has been equitably divided, and each Party shall hold the other harmless for debts, if any, assumed under this action." (emphasis added). These documents also contained the following statement: "*In lieu of* the division of property made herein, each party specifically and forever waives any claim for spousal maintenance from the other." (emphasis added).

The respondent sold these divorce forms to more than one hundred clients. Various court records established that the use of the forms often resulted in serious problems not only for the parties to the divorce proceeding but also for the court. In some instances judicial relief was denied to the parties due to the inaccurate and misleading character of the forms.

The respondent failed to file an answer to the grievance complaint. He advised the hearing panel that he chose not to contest the allegations in the complaint, but preferred instead to make an unsworn statement in mitigation. In his statement the respondent was unable to offer any explanation for the reference to "community property" in the forms. Nor could he give an account why the phrase "in lieu of" was used instead of the obviously intended phrase "in consideration of." Although the respondent acknowledged that some of his clients had been damaged by the forms, he exhibited no discernible remorse over their predicament.

The respondent's conduct in this case constitutes an egregious form of misleading and deceptive advertising in violation of DR2–101(A).[1] Further, the respondent's conduct manifests a gross carelessness in his representation of clients, C.R.C.P.

---

1. DR2–101(A) prohibits a lawyer from using or participating in the use of any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory, or unfair statement or claim. In order to promote the process of an informed selection of a lawyer by potential consumers of legal services, a lawyer is authorized to publish in print media or broadcast on television or radio certain "legal fee information" in the geographical area where the lawyer resides or maintains an office or in which a significant part of the lawyer's

241(B)(5), and, as well, demonstrates a fundamental misconception of the lawyer's role in our society that adversely reflects on his fitness to practice law at this time, DR1–102(A)(6). The representation conveyed by the respondent's advertisements was that the payment of $65.00 would entitle the client to legal representation in divorce proceedings, regardless of the circumstances of the particular case. What was actually provided, however, was a package of standardized forms which, due to extreme carelessness in composition, created a potential hazard for those who used them. The premise underlying the respondent's method of practicing domestic relations law seems to be that the lawyer fully discharges his duty to a client when he furnishes the client with some general forms for use and instructs the client on filling them out. We reject such a notion as contrary to the high standards of conduct required of a lawyer.

A basic tenet of the Code of Professional Responsibility is that "every person in our society should have ready access to the independent professional services of a lawyer of integrity and competence." EC1–1. To ensure that the public receives that to which it is entitled, we have required the successful completion of a rigorous program of formal legal education as one of the qualifications for admission to the bar. C.R.C.P. 208. To effectively offer legal assistance to a client, a lawyer necessarily must begin with a careful analysis of the

facts and a reasoned consideration of the legal principles bearing upon the particular situation under review. Only in this way can a lawyer come to an understanding of the client's problem and be in a position to offer meaningful assistance. The practice of law, in short, is not a business involving the marketing of legal stationery. It is a service oriented profession which requires a thorough understanding of the factual and legal components of a client's problem. Unless a lawyer accepts and appreciates this principle, then the informed judgment necessary for competent representation is impossible, as this case well demonstrates.

The respondent is suspended from the practice of law for three years and is hereby ordered to comply with all the provisions of C.R.C.P. 241.21 relating to the termination of all legal matters, the giving of notice to all clients and opposing counsel, and the maintenance of appropriate records as proof of compliance. Any petition for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with all the reinstatement requirements of C.R.C.P. 241.22.

The respondent is ordered to pay the costs of these proceedings in the amount of $150.05 within thirty days from this date.

clientele resides, provided that the information disclosed is presented in a dignified manner. DR2–101(B)(14) limits "legal fee information" to the following:

"(a) Fees charged for an initial consultation;

"(b) The availability upon request of a written schedule of fees or an estimate of the fee to be charged for the specific service or the availability of a written schedule of fees for group legal service organizations;

"(c) Hourly rates, provided that the statement discloses that the total fee charged will depend upon the number of hours which must be devoted to a particular matter and that the client is entitled, without obligation, to an estimate of the fee likely to be charged;

"(d) Fixed fees for routine legal services which are specified therein, such as simple wills, a change in name, an uncontested personal bankruptcy, an uncontested adoption, and an uncontested dissolution of marriage;

"(e) Range of fees for services, provided that the statement discloses that the specific fee within such range will vary depending upon the client's particular matter and that the client is entitled, without obligation, to a written estimate of the fee within the range likely to be charged;

"(f) A statement that contingent fee rates or schedules are available upon request; provided that any such printed legal fee information, including that which is printed on television, discloses (in print size equivalent to the largest print used in setting forth the fee information) all variables and other relevant factors which could affect such fee."