WILLIAM R. LUCERO PRESIDING DISCIPLINARY JUDGE
Ken Jones ("Respondent"), a lawyer licensed in Georgia but not in Colorado, operated a satellite office in Denver. Respondent purchased foreclosure information related to Colorado homes and then sent solicitation letters to homeowners advertising his legal services. The solicitation letters were not clearly marked as advertising material and misled homeowners into believing Respondent was associated with a county public trustee. These letters urged homeowners to take immediate action or risk facing fines or imprisonment. Respondent's conduct in violation of Colo. RPC 7.1(a)(1), 7.3(d), and 8.4(c) warrants suspension for one year and one day.
I. PROCEDURAL HISTORY
Geanne R. Moroye, Office of Attorney Regulation Counsel ("the People"), filed a complaint with Presiding Disciplinary Judge William R. Lucero ("the Court") on November 15, 2017. The People sent a copy of the complaint to Respondent's registered business address. Respondent failed to file an answer. By order dated January 29, 2018, the Court entered default, thereby deeming admitted the allegations and claims in the complaint.
On April 26, 2018, the Court held a sanctions hearing under C.R.C.P. 251.15(b).[1] Moroye represented the People; Respondent appeared by telephone.[2] During the hearing, the Court granted the People's request to DISMISS Claim I of their complaint, alleging a violation of Colo. RPC 4.1(a).
II. ESTABLISHED FACTS AND RULE VIOLATIONS
The Court adopts and incorporates by reference the averments in the admitted complaint, presented here in condensed form. Respondent took the oath of admission and was admitted to practice law in Georgia on December 9, 2005, under Georgia attorney registration number 435125. Respondent maintains a satellite office in Colorado, where he provides legal services concerning foreclosure defense and mortgage modification. He *1095 is thus subject to the Court's jurisdiction in this disciplinary proceeding.[3]
Respondent owns and manages Jones & Associates Law Group, LLC. The main office is located in Atlanta, and the satellite office is located in Denver.
Respondent purchased foreclosure information related to Colorado homes from RENAV, a data accumulation resource for short sales, auctions, foreclosures, and other distressed property. After obtaining this information, Respondent sent solicitation letters to homeowners, advertising his legal services. The return address area of the envelopes containing the solicitation letters stated: "Re: Mesa County Public Trustee Auction."[4] Respondent's name did not appear. The designation implies that the letter came from the Mesa County Public Trustee ("Trustee"). "IMPENDING ACTION" also appeared in bold letters on the front of the envelope above the addressee information.[5] This statement appeared in red ink, with all capital letters, in a large font. It was underlined for emphasis.
The back of the envelope read: "WARNING: $2,000 FINE, OR FIVE YEARS IMPRISONMENT OR BOTH FOR ANY PERSON INTERFERING WITH OR OBSTRUCTING DELIVERY OF THIS LETTER U.S. MAIL 16 USC 170."[6] There was no statement on the envelope indicating that it contained advertising material.
Based on the return address, the Trustee received two letters returned as undeliverable by the U.S. mail service. The Trustee had not sent these letters.
The contents of the letter were misleading in several ways. First, the designation "Re: Mesa County Public Trustee" appeared in the upper left-hand corner of the letter.[7] This suggests that the Trustee sent the letter. Second, the body of the letter stated: "[u]pon completion of the foreclosure sale, the ownership of your home will be immediately transferred to the highest bidder or the servicing lender or note holder."[8] This is an inaccurate statement. C.R.S. section 38-38-501 states that title does not transfer until all redemption periods have expired, or the nineteenth business day after the foreclosure sale, unless the purchase holder submits a statement to the Trustee declining to assign the certificate of purchase. In that case, title would transfer on the eighth day after the sale.
Third, the letter also stated that if the property is not vacant at the time of transfer, the new owner may immediately exercise his or her rights and begin eviction proceedings to have occupants physically removed by the Mesa County Sheriff's Office. This is also an inaccurate statement. The eviction process takes several weeks to complete.
Fourth, the letter stated that "[p]ublic records indicate that a Notice of Election and Demand has been filed with the Mesa County Office of the Public Trustee with the above-referenced foreclosure case number."[9] The letter went on to instruct the recipient to call and "[p]lease reference your Foreclosure Case # [ ]."[10] The case number in the letter was not an official case number. Rather, Respondent created the case number to establish a file in his office. Fifth, the letter referred to a sale date that might have been inaccurate and created confusion for the reader. Sixth, although the last statement in the letter contained the phrase "Advertising Material," this statement appeared in a much smaller font.[11]
The Jones law firm maintained several independent contractor relationships with lawyers admitted in other states. Those lawyers' names were listed on the Jones law firm's letterhead, appearing on the upper right-hand side of the letter. The lawyer listed in Colorado was K. Alexandra Cavin, who answered *1096 Respondent's advertisement on Craig's List. Although she and Respondent discussed listing her name on the letterhead, she did not author or review his solicitation letters bearing her name.
In this matter, Respondent violated three Rules of Professional Conduct:
• Respondent violated Colo. RPC 7.1(a)(1), which forbids a lawyer from making false or misleading communications about the lawyer or the lawyer's services, in three ways: by failing to state on the solicitation envelopes that the letters were advertising material; by implying that the letters were sent from the Trustee; and by marking the envelopes with "IMPENDING ACTION," leading the recipient to believe that the Trustee was taking immediate action as to the home in foreclosure status when, in fact, Respondent was soliciting potential clients.
• Respondent violated Colo. RPC 7.3(d), which requires, in part, that every written, recorded, or electronic communication from a lawyer soliciting professional employment from anyone known to be in need of legal services include the words "Advertising Material" on the outside of the envelope. Respondent transgressed this rule because he failed to include the words "Advertising Material" on the solicitation envelope that he mailed to prospective clients.
• Respondent violated Colo. RPC 8.4(c), which interdicts conduct involving dishonesty, fraud, deceit, or misrepresentation, in three ways: by misleading recipients of the letters into believing that the Trustee was contacting them concerning their home in foreclosure when, in fact, he was soliciting business; by failing on the outside of the envelope to notify the recipients that the contents contained advertising material; and by misleading recipients that their foreclosure matters had been assigned an official case number by the Trustee, when it was Respondent who had created the case number.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[12] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[13] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0 - Duty, Mental State, and Injury
Duty : By leading recipients of the letters to falsely believe that the Trustee had sent the letters and assigned their matters an official case number, by creating a misconception that the Trustee was taking immediate action, and by omitting the words "Advertising Material" from his solicitation envelopes, Respondent violated duties he owes as a professional to use candor and transparency in soliciting potential clients.
Mental State : Respondent testified that he did not try to deceive anyone with his advertisements. He said that he consulted with a lawyer in Colorado and thus believed that his advertisements complied with the Colorado Rules of Professional Conduct. The Court did not find these statements credible, however; it concludes that Respondent knowingly committed the misconduct at issue in this case.
Injury : Respondent's conduct caused potential injury to members of the public because his solicitation letters could have misled them. The recipients of the letters could have believed that the Trustee sent the letters and had assigned an official case number to their matter, necessitating their immediate action. Respondent's conduct also eroded public confidence in the legal profession.
*1097 ABA Standards 4.0-7.0 - Presumptive Sanction
ABA Standard 7.2 provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, thereby causing injury or potential injury to a client, the public, or the legal system. ABA Standard 5.13, on the other hand, calls for public censure when a lawyer knowingly engages in any non-criminal conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law. The Court begins with the presumptive sanction of suspension, however, because the theoretical framework of the ABA Standards notes that "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[14]
ABA Standard 9.0 - Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[15] Six aggravating factors are present here: Respondent attempted to have Mesa County homeowners retain his services through deceptive and dishonest advertising, evincing a dishonest motive; he engaged in a pattern of misconduct by sending out multiple solicitation letters; he violated multiple rules; his victims were vulnerable, as they were facing foreclosure of their homes; and he has substantial experience in the practice of law.[16] The Court also applies the aggravator of bad faith obstruction of the disciplinary proceeding.[17] The People indicated that Respondent refused to participate in their investigation, thwarting their ability to determine how many letters Respondent mailed and how many contacts he made or potential clients he reached through his misleading advertising. According to the People, Respondent's lack of cooperation made it difficult to ascertain the number of people harmed by his misconduct.[18]
Respondent testified at the hearing that he experienced personal problems over the past year, including filing for bankruptcy and the foreclosure of his partner's home. According to Respondent, these events affected his personal and business affairs, leading him to ignore this matter. The Court notes that Respondent's testimony offers some explanation as to why he did not participate here but does little to explain his proven misconduct. Thus, the Court declines to apply personal and emotional problems as a factor in mitigation.[19] The Court also declines to consider in mitigation the imposition of other sanctions.[20] Although the Mesa County District Court ordered Respondent on May 2, 2017, to cease advertising services or entering into contracts with consumers until he complied with the subpoena served by the Colorado Attorney General's Office, Respondent was sanctioned for his failure to comply with the Attorney General's subpoena, not for his misconduct. The Court does consider in mitigation Respondent's lack of prior discipline.[21]
Analysis Under ABA Standards and Colorado Case Law
The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[22] *1098 mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[23] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
The People request a suspension in this matter. Relevant case law supports this request. In People v. Roehl , the Colorado Supreme Court suspended a lawyer for three years for using misleading and deceptive advertising, engaging in gross carelessness, and engaging in conduct that adversely reflected on his fitness to practice law.[24] The lawyer regularly advertised his legal services in the newspaper, claiming that he provided divorce services for $65.00.[25] The advertisement's fine print read: "Court Costs Add'l."[26] When prospective clients contacted the lawyer, they were informed that the $65.00 fee did not include court representation.[27] Clients were also advised that the $65.00 applied only if the divorce was uncontested and no children or real estate was involved.[28] Additionally, the clients were told, the fee included only forms for a joint petition for dissolution and an instruction sheet.[29] But the lawyer's forms contained inaccuracies.[30] The lawyer sold these forms to over 100 clients, and often those forms caused the parties serious problems.[31] In imposing a lengthy suspension, the Colorado Supreme Court concluded that the lawyer's conduct "constitute[d] an egregious form of misleading and deceptive advertising[,] ... manifest[ed] a gross carelessness in his representation of clients[,] ... and adversely reflect[ed] on his fitness to practice law...."[32]
In contrast, in People v. Carpenter , the Colorado Supreme Court accepted a conditional admission and publicly censured a lawyer for placing misleading advertisements in the phone book.[33] The advertisements misstated the lawyer's areas of practice and implied that a number of lawyers were available in at least thirteen areas of practice, when in fact only five lawyers in fewer areas of practice were available at any given time.[34] He also falsely represented that he did business as an incorporated company when there was no properly incorporated company.[35] The Colorado Supreme Court applied ABA Standard 5.13 and applied two factors in aggravation-prior discipline and substantial experience in the practice of law-as well as the mitigating factor of cooperation.[36]
Courts in other jurisdictions have also suspended lawyers who knowingly misrepresented their services to the community at large. In In re Morse , the Supreme Court of California suspended a lawyer for five years, with three years served, for mass mailing unlawful, misleading statements.[37] In that case, the lawyer mailed four million copies of a solicitation letter to California property owners, offering to assist with the filing of homestead declarations through a document processing agency.[38] His letters led recipients to believe that he was affiliated with lending companies.[39] The lawyer had no knowledge of whether the recipients were *1099 eligible to record a homestead declaration.[40] The California Attorney General filed a civil action against the lawyer seeking to enjoin him from mailing advertisements.[41] The Supreme Court of California determined that the lawyer engaged in misleading advertisements, including by leading the recipients to believe that he was affiliated with a lender and by failing to clearly identify the mailing as an advertisement.[42] That court applied three significant aggravating factors and one lesser mitigating factor in rejecting the recommended discipline of a sixty-day suspension.[43] That court also considered "the number of mailings (four million), the duration of the lawyer's misconduct (nearly four and a half years), and ..." his refusal to cooperate with the attorney general in determining the appropriate sanction.[44]
The Supreme Court of Louisiana suspended a lawyer for one year and one day in In re Broome , where the lawyer directly solicited prospective clients who were already represented by the Department of Justice.[45] The lawyer made statements that led the prospective clients to believe the lawyer was connected with that department.[46] There, the court determined that the lawyer's conduct was intentional and knowing but caused no serious harm to a client, the public, or the profession, and thus disbarment was not warranted.[47] Applying five factors in aggravation-including dishonest motive, pattern of misconduct, and substantial experience-along with the sole mitigator of imposition of other sanctions,[48] the court concluded that suspension for one year and one day was appropriate.[49]
A served suspension of six months typically is viewed as a baseline sanction, to be adjusted upward or downward in consideration of aggravating or mitigating factors.[50] Using a suspension of six months as a baseline, the Court finds that the magnitude and seriousness of the aggravators supports a lengthier served suspension. The Court also looks to the Roehl and Broome cases for guidance, as they are the most analogous to the facts here. Like the lawyers in these two cases, Respondent knowingly misled potential clients into believing he was affiliated with a governmental office, when he actually had no such association. Unlike Roehl , however, the Court does not know how many misleading mailings Respondent sent due to his lack of cooperation, and some of the rule violations at issue in that case are not present here. Considering the many aggravating factors, juxtaposed with the two mitigating factors, the Court concludes the appropriate sanction for Respondent's misconduct is suspension for one year and one day.
IV. CONCLUSION
By sending deceptive and misleading advertisements to homeowners facing foreclosure, Respondent knowingly flouted his obligations to maintain professional standards and to uphold public confidence in the legal *1100 profession. His misconduct, which is compounded by the number of applicable aggravating factors, will be answered by suspension for one year and one day.
V. ORDER
The Court therefore ORDERS :
1. KEN JONES , Georgia attorney registration number 435125 , will be SUSPENDED FROM THE PRACTICE OF LAW IN COLORADO FOR ONE YEAR AND ONE DAY . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."[51]
2. Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motion on or before Tuesday, June 5, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Tuesday, June 12, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Tuesday, June 5, 2018 . Any response thereto MUST be filed within seven days.

The People filed a "Joint Exhibit List" on April 23, 2018, listing stipulated exhibits S1-S8 and Respondent's non-stipulated exhibits A-H. Neither party, however, offered any exhibits for admission at the hearing, stipulated or otherwise. Accordingly, the Court did not consider any exhibits in reaching its decision.

Respondent telephoned the Court approximately twenty minutes after the start of the sanctions hearing.

See C.R.C.P. 202.1 ; C.R.C.P. 251.1(b) ; Colo. RPC 8.5(a).

Compl. ¶ 9(a).

Compl. ¶ 9(b).

Compl. ¶ 9(c).

Compl. ¶ 11(a).

Compl. ¶ 11(b).

Compl. ¶ 11(d).

Compl. ¶ 11(d).

Compl. ¶ 11(f).

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(b)-(d) and (h)-(i).

ABA Standard 9.22(e).

The People also indicated that Respondent neglected to participate in the Attorney General's investigation.

See ABA Standards 9.32(c).

ABA Standards 9.32(k).

ABA Standards 9.32(a).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo.2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

655 P.2d 1381, 1382-83 (Colo. 1983).

Id . at 1383.

Id . at 1381.

Id . at 1382.

Id .

Id .

Id .

Id .

Id .

893 P.2d 777, 778 (Colo. 1995).

Id . at 777.

Id . at 778.

Id .

11 Cal.4th 184, 12 Cal.4th 344A, 44 Cal.Rptr.2d 620, 900 P.2d 1170, 1185 (1995).

Id . 44 Cal.Rptr.2d 620, 900 P.2d at 1171.

Id . 44 Cal.Rptr.2d 620, 900 P.2d at 1173.

Id .

Id .

Id . 44 Cal.Rptr.2d 620, 900 P.2d at 1175-76.

Id . 44 Cal.Rptr.2d 620, 900 P.2d at 1176-77, 1182.

Id . 44 Cal.Rptr.2d 620, 900 P.2d at 1184.

815 So.2d 1, 2 (La. 2002).

Id . at 2.

Id . at 9.

Id .

Id . at 10.

See, e.g., In re Cummings , 211 P.3d 1136, 1140 (Alaska 2009) (imposing a three-month suspension based on a six-month "baseline" set forth in ABA Standard 2.3, considered in conjunction with applicable mitigating factors); In re Moak , 205 Ariz. 351, 71 P.3d 343, 348 (2003) (noting that the presumptive suspension period is six months); In re Stanford , 48 So.3d 224, 232 (La. 2010) (imposing a six-month deferred suspension after considering the "baseline sanction" of six months served and deviating downward from that sanction based on one aggravating factor, four mitigating factors, and no actual harm caused); Hyman v. Bd. of Prof'l Responsibility , 437 S.W.3d 435, 449 (Tenn. 2014) (describing a six-month served suspension as a baseline sanction, to be increased or decreased based on aggravating or mitigating circumstances); In re McGrath , 174 Wash.2d 813, 280 P.3d 1091, 1101 (2012) ("If suspension is the presumptive sanction, the baseline period of suspension is presumptively six months.").

In general, an order and notice of suspension will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.