IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 04, 2025

## ELLIOTT J. SCHUCHARDT v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Knox County**
**No. 207706-3        D. Kelly Thomas, Jr., Senior Judge**

---

### No. E2024-00812-SC-R3-BP

---

This is an attorney discipline case. Elliott J. Schuchardt was licensed to practice law in Tennessee in 2008. Beginning in 2019, several individuals reported Mr. Schuchardt to the Board of Professional Responsibility. These complaints detailed conduct that implicated the following rules of professional conduct ("RPC"): RPC 1.1 (Competence), 1.3 (Diligence), 1.4(a)–(b) (Communication), 1.5(b) (Fees), 1.7(a)(1) (Conflict of Interest), 1.16(d) (Declining or Terminating Representation), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal), 3.4(c) (Fairness to Opposing Party and Counsel), 4.2 (Communication with a Person Represented by Counsel), 4.4(a)(1) (Respect for the Rights of Third Persons), 8.1(a) (Bar Admission and Disciplinary Matters), 8.2(a)(2) (Judicial and Legal Officials), 8.4(c) (Misconduct-Dishonesty/Fraud/Deceit/Misrepresentation), and 8.4(d) (Misconduct-Administration of Justice). A Hearing Panel of the Board of Professional Responsibility found that Mr. Schuchardt violated these RPCs on forty-seven occasions and recommended disbarment. The Knox County Chancery Court affirmed. Mr. Schuchardt now asks us to reverse. Because ample evidence supports the decisions below, we affirm Mr. Schuchardt's disbarment.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Chancery Court Affirmed**

MARY L. WAGNER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Elliott J. Schuchardt, Knoxville, TN, Pro Se.

James W. Milam, Nashville, TN, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

# OPINION

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Attorney Elliot J. Schuchardt was licensed to practice law in Tennessee in 2008.[1] After the Board of Professional Responsibility ("BPR" or "Board") investigated and prosecuted several ethics complaints against Mr. Schuchardt, a BPR Hearing Panel found numerous violations of the Rules of Professional Conduct and recommended disbarment. On appeal, the Knox County Chancery Court affirmed. We review the decisions below and the recommendation of disbarment.

*Factual Background*

### A.   Jamie McBryar

Jamie McBryar hired Mr. Schuchardt to obtain a divorce and spousal support from her then-spouse Janine McBryar (née Lefler).[2] Ms. McBryar also sought custody over a minor child she had co-parented with Ms. Lefler. Mr. Schuchardt filed a divorce petition on behalf of Ms. McBryar on January 26, 2019 in Knox County Circuit Court.

Following the filing of Ms. McBryar's divorce petition, Ms. Lefler initiated a separate divorce action against Ms. McBryar in Knox County Chancery Court. Rather than consolidating the two cases, Mr. Schuchardt engaged only in the action filed by Ms. Lefler.

Serious issues occurred in both lawsuits. We begin by noting issues with the first action filed by Mr. Schuchardt. First, Mr. Schuchardt failed to include divorce as a cause of action or to include a prayer for divorce. Second, Mr. Schuchardt failed to seek an order restraining Ms. Lefler from taking the couple's minor child out of the jurisdiction, but he did request the child be returned to the jurisdiction. Third, Mr. Schuchardt failed to submit a proposed temporary parenting plan, contrary to the court's local rules.[3] Fourth, Mr. Schuchardt failed to include Ms. Lefler's best-known address in the summons attached to the complaint, despite having an Oregon address for Ms. Lefler and stating it in the complaint. Fifth, Mr. Schuchardt neglected to effectuate service of process on Ms. Lefler,

---

[1] Mr. Schuchardt graduated from law school in 1993 and initially practiced out of state. However, Mr. Schuchardt was not licensed in Tennessee until 2008. *See* https://www.tbpr.org/attorneys/027016.

[2] To avoid confusion, we will refer to Janine McBryar as Ms. Lefler.

[3] *See* Knox Cnty., Fourth Cir. Ct. R. 15(A) ("In all actions seeking the establishment of residential schedules and/or parenting responsibilities, the plaintiff or petitioner shall file with the complaint temporary parenting plans agreed upon by the parties, or, if no agreement has been reached, a proposed temporary parenting plan of the plaintiff or petitioner.").

even after eventually obtaining her Tennessee address. Ultimately, Mr. Schuchardt abandoned the Circuit Court case once Ms. Lefler filed her complaint in Chancery Court.

Problems also occurred with Mr. Schuchardt's lawyering in the Chancery Court action. First, Mr. Schuchardt violated several local rules.[4] Second, Mr. Schuchardt failed to comply with Tennessee Code Annotated section 29-14-107(b), which requires a party to notify the Tennessee Attorney General when challenging the constitutionality of a statute.[5] Finally, Mr. Schuchardt did not conduct any discovery for over six months, while Ms. Lefler's action was pending.

Issues also arose from Mr. Schuchardt's communications with Ms. McBryar. Mr. Schuchardt failed to explain and adequately communicate with Ms. McBryar regarding their fee arrangement. Mr. Schuchardt explained to Ms. McBryar that "[t]here do not [sic] seem to be sufficient assets to make it worthwhile to handle the case on credit[,]" and that he would withdraw if Ms. McBryar did not pay him $1,500. This surprised Ms. McBryar. She recalled paying Mr. Schuchardt a $500 deposit, and Mr. Schuchardt agreeing to forgo receiving payment until Ms. McBryar received spousal support or disability benefits. Ms. McBryar repeatedly asked Mr. Schuchardt to seek a continuance in lieu of withdrawal and offered to pay him a small sum for that service. Mr. Schuchardt waffled. At times he assured Ms. McBryar that he would attend the hearing, and at other times he suggested the opposite. Lacking a straight answer from Mr. Schuchardt, Ms. McBryar contacted another attorney to represent her at the last minute, Abby Rubenfeld.

Mr. Schuchardt did not withdraw in a responsible manner or communicate clearly with Ms. Rubenfeld. Ms. Rubenfeld asked Mr. Schuchardt whether Ms. McBryar would have competent counsel at the hearing. Mr. Schuchardt told Ms. Rubenfeld to "[e]nter an appearance, if you want to get involved." But Mr. Schuchardt also assured Ms. Rubenfeld

---

[4] Mr. Schuchardt did not include in his response to Ms. Lefler's complaint information required under the Uniform Child Custody Jurisdiction and Enforcement Act. *See* Knox Cnty. Ch. Ct. R. 13(B) ("Each initial pleading or motion shall set forth the information required by Rule 4 of these rules and as required by Tenn. Code Ann. § 36-4-106. Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201 et. seq., all filings in which the custody of a child is at issue shall set forth in the first filing the information required by the Act and in particular by Tenn. Code Ann. § 36-6-224."). Mr. Schuchardt did not include the required affidavit in his motion for spousal support and interim counsel fees. *See* Knox Cnty. Ch. Ct. R. 13(E) ("Upon the filing of a petition or motion seeking the modification of child support or alimony, each party shall file, no later than 5 days prior to the hearing, an affidavit listing the assets, debts, gross monthly income and monthly living expenses of each party to the extent known to the filing party, as well as any other relevant financial facts that the filing party desires the Court to consider."). Mr. Schuchardt also failed to submit a proposed parenting plan. *See* Knox Cnty. Ch. Ct. R. 13(F)(ii) ("If no agreement has been reached, the defendant or respondent shall file with the answer, the defendant's or respondent's proposed temporary parenting plan.").

[5] Mr. Schuchardt challenged the constitutionality of Tennessee Code Annotated section 36-2-304, which provides a presumption of parentage on gender-based grounds, because Ms. McBryar and Ms. Lefler were a same-sex couple.

that he would represent Ms. McBryar "competently and effectively" at the custody hearing, and that Ms. Rubenfeld could report him to the Board. Ultimately, Mr. Schuchardt filed a motion to withdraw, and Ms. Rubenfeld entered a notice of appearance one day prior to the custody hearing. In order to represent Ms. McBryar competently, Ms. Rubenfeld had to reschedule the hearing, which delayed the case by nearly six months and further frustrated Ms. McBryar's attempt to obtain spousal support.

## B. Bennett Hirschorn

Bennett Hirschorn, a real estate attorney licensed in Tennessee, filed a complaint against Mr. Schuchardt with the Board in January 2020. Mr. Hirschorn represented Ann Richards and Mary Jane Douglas, both real estate agents, in two unrelated matters.

Ms. Richards is a Knoxville-based real estate professional who hired Mr. Hirschorn in a dispute with several of her former employees. Mr. Schuchardt previously represented Ms. Richards, and the two also dated.

Ms. Douglas, a Nashville-based real estate professional, hired Mr. Schuchardt in September 2019 to represent her in a medical malpractice action. At the time, Ms. Douglas was facing eviction and Mr. Schuchardt allowed her to live in his home for $500 a month. He also recommended that she reach out to Ms. Richards for work. This arrangement was short lived as in October 2019, while still representing her, Mr. Schuchardt filed a detainer action seeking to evict Ms. Douglas from his home. Ms. Douglas hired Mr. Hirschorn to represent her in the eviction action filed against her by Mr. Schuchardt.

Seeking to gain leverage in his detainer action against Ms. Douglas, Mr. Schuchardt called Mr. Hirschorn on October 22, 2019. Among several threats, Mr. Schuchardt informed Mr. Hirschorn he would file a complaint against Ms. Richards with Tennessee's Real Estate Commission to place Ms. Richards' "real estate license . . . in jeopardy," by "saying some really bad stuff."[6] However, Mr. Schuchardt stated that he would not file this complaint if Mr. Hirschorn persuaded Ms. Douglas to vacate Mr. Schuchardt's property in the eviction action. This was a clear quid pro quo exchange: Mr. Schuchardt threatened to jeopardize Ms. Richards' career unless Mr. Hirschorn convinced Ms. Douglas to vacate Mr. Schuchardt's property.

Mr. Schuchardt then went a step further. Mr. Schuchardt threatened to inform the judge presiding over Ms. Richards' case that she had testified falsely, stating "I don't care if evidence is closed, I'm gonna say that Ann Richards is a liar in that letter. So, fuck you

---

[6] We rely on "Appendix A" to the Hearing Panel's Summary Judgment Order, which contains a partial transcript of the recording Mr. Hirschorn made of his phone call with Mr. Schuchardt. The Hearing Panel reviewed the audio recording and the Board's Second Rule 56.03 Statement of Undisputed Facts in producing the transcript. The audio recording was not made a part of the record before us.

and fuck Ann Richards." Finally, when Mr. Hirschorn requested that Mr. Schuchardt cease communication with Ms. Douglas, Mr. Schuchardt declined, stating "fuck that . . . [y]ou can report me to the Board[,] I'm not going to comply with that."

To summarize, Mr. Hirschorn alleged that Mr. Schuchardt violated several RPCs by threatening two of Mr. Hirschorn's clients (Ms. Douglas and Ms. Richards), taking adverse actions against Mr. Schuchardt's then-current client (Ms. Douglas), and communicating with a person represented by counsel (Ms. Douglas).

## C.      Aaron King

On April 8, 2019, Mr. King hired Mr. Schuchardt in a divorce action and two juvenile court proceedings. A dispute arose regarding the payment of fees. Due to nonpayment of legal fees, Mr. Schuchardt withdrew from the divorce case and one of the two juvenile proceedings.

Mr. King requested his case file from Mr. Schuchardt. Mr. Schuchardt refused, claiming that he would hold the file as security until Mr. King paid his outstanding legal fees to Mr. Schuchardt. Mr. Schuchardt's case file was critical to a criminal case where Mr. King was the defendant because it contained information impeaching Mr. King's wife in the divorce litigation. Mr. King's attorney in the criminal matter, Robert Kurtz, also requested the case file from Mr. Schuchardt. Mr. Schuchardt again refused. Mr. Kurtz provided Mr. Schuchardt with a formal ethics opinion that explained it was improper for him to hold Mr. King's case file for security because releasing the file was "necessary to avoid [a] materially adverse effect on the client." Formal Ethics Op. 2015-5-160, https://perma.cc/D9SP-TSNY. Mr. Schuchardt again refused to turn over the file and further responded by threatening to harm Mr. King's credibility with the criminal court.

Mr. King, through his attorney, served Mr. Schuchardt with a subpoena to produce the file. Mr. Schuchardt moved to quash the subpoena. The criminal court denied Mr. Schuchart's motion to quash and then ordered Mr. Schuchardt to produce the file.[7]

As the dispute over the client file was unfolding, Mr. Schuchardt sued Mr. King for breach of contract and failure to pay legal fees. At the time of filing suit, Mr. Schuchardt was still counsel of record for Mr. King in one of his pending juvenile court cases. Mr. Schuchardt did not effectively withdraw from his representation of Mr. King until August of 2020, nearly six months after filing suit against Mr. King.

---

[7] At the hearing for the motion to quash, Mr. Schuchardt represented to the court that he had discussed the formal ethics opinion Mr. Kurtz provided with disciplinary counsel. But Ethics Counsel for the Board, Laura Chastain, submitted an affidavit where she stated that Mr. Schuchardt had not contacted the Board from January 26, 2006 to September 22, 2022, indicating that Mr. Schuchardt made a false representation to the court.

## D. Cherie Dunn

Mr. Schuchardt represented Cherie Dunn to contest a conservatorship petition filed by her ex-husband in Anderson County Chancery Court.[8]  The couple's son, Dustin Welsh, has autism, and Ms. Dunn's ex-husband believed he would require full-time care after attaining the age of majority.  Ms. Dunn hired Mr. Schuchardt to challenge the conservatorship petition.  The conservatorship hearing was initially set for September 28, 2020.  Mr. Schuchardt moved for a continuance, and the hearing was reset for November 9, 2020.  Mr. Schuchardt did not seek or obtain an extension to file an answer.  Instead, Mr. Schuchardt filed an answer to the petition the afternoon following the hearing.

Mr. Schuchardt does not dispute these basic facts.  Rather, he denies any fault by pointing to the logistical difficulties of the COVID-19 pandemic and his claim that the chancellor presiding over the conservatorship petition accepted his late answer during the hearing.  Regardless of these explanations, Mr. Schuchardt's late filing violated the court's local rules, which required responses to motions to be filed "no later than 48 hours prior to the hearing on the motion."  Anderson Cnty. Loc. R. 117.02.

Moreover, Mr. Schuchardt neglected to draft the pleading as Ms. Dunn instructed. Ms. Dunn e-mailed Mr. Schuchardt a week prior to the conservatorship hearing and asked him whether he would file a response as required.  Mr. Schuchardt assured her that he would send her a draft of the response.  After receiving the draft, Ms. Dunn sent Mr. Schuchardt a document containing suggested edits.  Mr. Schuchardt claimed that he could not open her document.  Ms. Dunn then sent him an e-mail containing a list of questions and suggested edits.  For example, the draft response misspelled "Welsh."  Ms. Dunn also requested that Mr. Schuchardt amend the response to state that "[i]t is in the best interest of the child for the court to consider the least restrictive alternative plan with supported decision making plan."  The response filed shows that Mr. Schuchardt did not address all of Ms. Dunn's concerns.  For example, the filed response still misspelled "Welsh" as "Welsch."  Additionally, the response did not request that the court consider "the least restrictive alternative plan with supported decision making plan."  According to Mr. Schuchardt, he provided Ms. Dunn with a draft and was not required to include all of her comments.[9]

---

[8] To avoid confusion, we will refer to Derek Welsh as Mr. Welsh, and to the couple's son as Mr. Dustin Welsh.

[9] Even if Mr. Schuchardt was not required to make all the edits Ms. Dunn proposed, he should have, at a minimum, corrected the errors that Ms. Dunn noted.  In addition to misspelling Welsh, Mr. Schuchardt's initial draft denied that Ms. Dunn's address was correct in the petition.  Ms. Dunn informed Mr. Schuchardt that the address in the petition was her correct address, so denying it was incorrect.  Instead of correcting this error by admitting the address, Mr. Schuchardt included the denial and stated "[i]t is denied that Cherie Dunn resides at the address in the Petition.  Her correct address is _____" (blank in original).

In addition to the deficient response, another issue emerged during the disciplinary proceedings regarding Ms. Dunn's complaint. Mr. Schuchardt alleged that Ms. Dunn's son was present at the conservatorship hearing and testified. This conflicted with the recollection of the trial court judge, the guardian *ad litem*, and Ms. Dunn, who all stated that Mr. Dustin Welsh was not present at the hearing. The Board gave Mr. Schuchardt an opportunity to retract his statement, but he declined. As an alternative, the Board offered Mr. Schuchardt a private reprimand for this misstatement, which he also declined. Instead, Mr. Schuchardt doubled down by engaging in abusive and wasteful discovery tactics to try proving that an autistic child attended a hearing that he simply did not attend. For example, Mr. Schuchardt e-mailed disciplinary counsel with the Board and stated "[b]e careful signing a pleading. You will be . . . putting your career at risk." In the same email, Mr. Schuchardt stated "I have warned you. My distribution list will get progressively bigger, if your office continues in this unethical and illegal course of conduct."

*Procedural History*

A.    The Hearing Panel's Summary Judgment Order

In its Summary Judgment Order, the Hearing Panel reviewed Mr. Schuchardt's motion to dismiss and motion for summary judgment, as well as the Board's motion for summary judgment. The Hearing Panel also resolved several allegations in a Sanctions Order. In that Order, the Hearing Panel found that Mr. Schuchardt committed several rules violations related to the Board's prosecution of Ms. Dunn's complaint. For example, Mr. Schuchardt made several false representations to the Board, made several false allegations about the Board, and threatened disciplinary counsel for the Board. Deeming these allegations admitted, the Hearing Panel found that Mr. Schuchardt violated RPC 8.1(a) (Bar Admission and Disciplinary Matters), 8.2(a)(2) (Judicial and Legal Officials), 8.4(c) (Misconduct-Dishonesty/Fraud/Deceit/Misrepresentation), and 8.4(d) (Misconduct-Administration of Justice). Then, the Hearing Panel denied Mr. Schuchardt's motion to dismiss, where he argued that *Brady v. Maryland* applied to his case. The Hearing Panel also denied Mr. Schuchardt's motion for summary judgment.

Finally, the Hearing Panel granted in part and denied in part[10] the Board's motion for summary judgment. In granting summary judgment, the Hearing Panel made several findings on different rules violations based upon the undisputed facts. First, the Hearing Panel made the following findings related to Ms. McBryar's complaint:

> Respondent committed the following ethics violations related to his representation of Jamie McBryar:

---

[10] The Hearing Panel found genuine disputes of material fact related to portions of Ms. McBryar's complaint and portions of Mr. Hirschorn's complaint.

- 7 -

a. Failing to move for an Order in the Knox County Fourth Circuit Court case to restrain [Ms. Lefler] from taking the minor child out of the jurisdiction or, alternatively, failing to seek an order commanding the return of the child to the jurisdiction, in violation of RPCs 1.1 ([C]ompetence), 1.3 ([D]iligence), and 3.2 ([E]xpediting [L]itigation);

b. Failing to take any action in the Knox County Chancery Court case to effectuate the clear goals of his client, Jamie McBryar, in violation of RPCs 1.1 ([C]ompetence), 1.3 ([D]iligence), and 3.2 ([E]xpediting [L]itigation);

c. Failing to dispute, in his Answer to [Ms. Lefler's] Chancery Court Complaint, the specified "Number of Children: 0" in the "STATISTICAL DATA" section of the complaint, in violation of RPC 1.1 ([C]ompetence);

d. Failing to submit a proposed temporary parenting plan with the Answer as required by . . . Local Rule 13(F)(ii) of the Knox County Chancery Court, in violation of RPC 1.1 ([C]ompetence);

e. Failing to file an Affidavit in support of Respondent's Motion for Spousal Support and Interim Counsel Fees, listing the assets, debts, gross monthly income, and monthly living expenses of each party to the extent known by the filing party, as required by Local Rule 13(E) of the Knox County Chancery Court, in violation of RPC 1.1 ([C]ompetence);

f. Seeking only a determination that Jamie McBryar is the "lawful parent" of the minor at issue, and failing to seek actual "custody" in the prayer for relief in his Motion for Custody Order, in violation of RPC 1.1 ([C]ompetence);[11]

g. Failing to provide the statutory notice to the Tennessee Attorney General, as required by Tenn. Code Ann. § 29-14-107(b), because the Motion for Custody Order challenges the constitutionality of Tenn. Code Ann. § 36-2-304, in violation of RPC 1.1 ([C]ompetence);

h. Failing to conduct any discovery on behalf of Jamie McBryar client as to the substantive issues in the Chancery Court case while the case was pending

---

[11] The Hearing Panel found no genuine issue of material fact as to "whether [Mr. Schuchardt] failed to dispute, in his Answer to [Ms. Lefler's] Chancery Court complaint, the number of children in the 'Statistical Data' section." As stated, this is factually accurate. However, it is also incomplete. While it is true that Mr. Schuchardt did not dispute the number of children in that specific section, his answer included a counter-complaint that stated "[t]he parties have one minor child." To be sure, a better practice would have been for Mr. Schuchardt to include this statement in his answer, rather than his counter-complaint section. But for the purpose of this case, we disagree with the Hearing Panel's finding that there was no genuine dispute of material fact on this issue.

- 8 -

for over six (6) months, in violation of RPCs 1.3 ([D]iligence), and 3.2 ([E]xpediting [L]itigation);

i. Failing to explain adequately or communicate fully the fee arrangement with Jamie McBryar, in violation of RPCs 1.4(a)-(b) ([C]ommunication) and 1.5(b) ([F]ees);

j. Failing to keep his client informed as to the status of the fees that had been incurred, in violation of RPCs 1.4(a)-(b) ([C]ommunication) and 1.5(b) ([F]ees);

k. Failing to cooperate with successor counsel, Abby Rubenfeld, in violation of RPC 1.16(d)(3) ([D]eclining or [T]erminating [R]epresentation);

l. Improperly withholding Ms. McBryar's client file from Ms. McBryar and Ms. Rubenfeld, in violation of RPC 1.16(d)(5) ([D]eclining or [T]erminating [R]epresentation); and

m. Engaging in conduct prejudicial to the administration of justice, in violation of RPC 8.4(d).

Second, the Hearing Panel made the following findings related to Mr. Hirschorn's complaint:

Respondent also committed the following ethics violations relating to the Hirschhorn complaint:

a. Creating a concurrent conflict of interest between himself and his client, Mary Jane Douglas, by filing a detainer action against Ms. Douglas while simultaneously having an attorney-client relationship regarding her medical malpractice claim, in violation of RPC 1.7(a)(1) ([C]onflict of [I]nterest);

b. During a 10/22/19 telephone call with Informant Hirschorn, refusing to refrain from communicating directly with Mary Jane Douglas (Hirschhorn's client) regarding the detainer action, in violation of RPC 4.2 ([C]ommunication with a [P]erson [R]epresented by [C]ounsel);

c. Communicating to Informant Hirschhorn threats (i) to file a complaint with the Tennessee Real Estate Commission against Ann Richards (another client of Hirschhorn's in a matter wholly unrelated to the detainer action against Ms. Douglas) and (ii) to correspond with the presiding judge of Ms. Richards' unrelated case against Bruce Klassen to persuade the judge that Ms. Richards is dishonest, unless a "quid pro quo" could be reached with

respect to Respondent's detainer action against Ms. Douglas, in violation of RPC 4.4(a)(1) ([R]espect for the [R]ights of [T]hird [P]ersons);

d. Communicating to Informant Hirschhorn his intention to "threaten" Ms. Douglas with adverse action against her real estate license unless a "quid pro quo" could be reached with respect to Respondent's detainer action against Ms. Douglas, in violation of RPC 4.4(a)(1) ([R]espect for the [R]ights of [T]hird [P]ersons); and

e. Threatening the licenses and livelihoods of Ms. Richards and Ms. Douglas as leverage to settle his detainer action against Ms. Douglas, in violation of RPC 8.4(d) ([M]isconduct-[A]dministration of [J]ustice).

Third, the Hearing Panel made the following findings related to Mr. King's complaint:

As to the King complaint, the Panel found that Respondent committed the following ethics violations:

a. Creating a concurrent conflict of interest between himself and his client, Aaron King, by filing a civil action against Mr. King while still formally representing him in the juvenile court child support case, in violation of RPC 1.7(a)(1) ([C]onflict of [I]nterest);

b. Improperly withholding Mr. King's client file from Mr. King and his attorney, Robert Kurtz, in violation of RPC 1.16(d) ([D]eclining or [T]erminating [R]epresentation);

c. Knowingly and intentionally making false statements of fact to Judge Scott Green that (i) Respondent previously had "conversations" with the Disciplinary Board which never occurred and (ii) Formal Ethics Opinion 2015-F-160 "is no longer valid law," in violation of RPCs 3.3(a)(1) ([F]alse [S]tatement to a [T]ribunal), 8.4(c) ([M]isconduct-[D]ishonesty/[F]raud/[D]eceit/[M]isrepresentation), and 8.4(d) ([M]isconduct-[A]dministration of [J]ustice); and

d. Threatening to testify against Mr. King as to Mr. King's reputation for dishonesty in an effort to gain an advantage in Respondent's case, in violation of RPCs 1.7(a)(1) ([C]onflict of [I]nterest) and 1.16(d) ([D]eclining or [T]erminating [R]epresentation).

Finally, the Hearing Panel made the following findings related to Ms. Dunn's complaint:

- 10 -

Respondent committed the following ethics violations relating to the Dunn complaint:

a. Knowingly disobeying Local Rule 117.02 of the Anderson County Chancery Court by failing to file his Answer on behalf of his client, Cherie Dunn, no later than 48 hours prior to the scheduled court hearing, in violation of RPCs 1.1 ([C]ompetence), 1.3 ([D]iligence), and 3.4(c) ([F]airness to [O]pposing [P]arty and [C]ounsel); and

b. Knowingly filing the Answer on behalf of Complainant Dunn in draft form, and without consideration of Ms. Dunn's comments and edits concerning the content of the Answer, in violation of RPCs 1.1 ([C]ompetence), 1.3 ([D]iligence), and 1.4(a) ([C]ommunication).

B.     Hearing Panel's Final Order

The Hearing Panel conducted a hearing to resolve the remaining allegations of ethical violations made against Mr. Schuchardt, and to determine an appropriate sanction. The Hearing Panel considered the following issues in its Final Order:

a. Whether [Mr. Schuchardt] violated RPCs 1.1 ([C]ompetence) and 1.4(a) ([C]ommunication) by filing a complaint in the Knox County Fourth Circuit Court on behalf of [Ms.] McBryar that sought "shared custody" of a minor child and "spousal support" without affirmatively stating a cause of action for divorce—even though [Mr. Schuchardt] knew Ms. McBryar wanted a divorce and even though he invoked the Tennessee divorce statute . . . ;

b. Whether [Mr. Schuchardt] violated RPCs 1.1 ([C]ompetence) and 3.4(c) ([F]airness to [O]pposing [P]arty and [C]ounsel) by failing to submit a proposed temporary parenting plan with the Circuit Court Complaint, as required by Fourth Circuit Court Local Rule 15(A);

c. Whether [Mr. Schuchardt] violated RPC 1.1 ([C]ompetence) by failing to include, on the Circuit Court Summons, the best-known address for Defendant [Ms. Lefler], even though Respondent explicitly stated her Oregon address in the body of the complaint;

d. Whether [Mr. Schuchardt] violated RPCs 1.1 ([C]ompetence) and 1.3 ([D]iligence) by failing to effectuate service upon [Ms. Lefler] in the Circuit Court case, after her Tennessee address became known through [Ms. Lefler's] competing Chancery Court Complaint;

- 11 -

e. Whether [Mr. Schuchardt] violated RPC 1.1 ([C]ompetence) by concluding that the second-filed Chancery Court action filed by [Ms. Lefler] "mooted" Respondent's first-filed action in the Fourth Circuit Court;

f. Whether [Mr. Schuchardt] violated RPCs 1.1 ([C]ompetence) and 3.4(c) ([F]airness to [O]pposing [P]arty and [C]ounsel) by failing, in the Knox County Chancery Court action, to comply with Knox County Chancery Court Local Rule 13(b) by not providing in his "first filing" a recitation of all information required by the Uniform Child Custody Jurisdiction and Enforcement Act;

g. Whether [Mr. Schuchardt] violated RPC 1.1 ([C]ompetence) by seeking "spousal support" in the first sentence of a three-page "Motion for Custody Order" that never affirmatively asked for "custody"; and

h. Whether [Mr. Schuchardt] violated RPCs 1.4 ([C]ommunication) and 1.16(d)(1)-(2) ([D]eclining or [T]erminating [R]epresentation) by failing to provide reasonable notice to [Ms.] McBryar regarding his withdrawal from representation and thereby failing to allow sufficient time for engagement of new counsel.

The Hearing Panel found that the Board failed to prove "a," "c," "d," and "e" by a preponderance of the evidence, but did prove "b," "f," "g," and "h."[12]

First, the Hearing Panel addressed RPC 1.1 (Competence) in connection with Mr. Schuchardt's representation of Ms. McBryar. The Hearing Panel found that Mr. Schuchardt's failure to state divorce as the cause of action or include it in a prayer for divorce in the complaint violated RPC 1.1. The Hearing Panel found that a reprimand was the presumptive sanction.

Second, the Hearing Panel addressed RPCs 1.3 (Diligence) and 1.4(a)–(b) (Communications with the Client). In the context of Ms. McBryar's complaint, the Hearing Panel found that Mr. Schuchardt's failure to conduct discovery and support the motions he filed on behalf of Ms. McBryar violated RPCs 1.3 and 1.4(a)–(b). The Hearing

---

[12] As to the allegations in paragraph "g," the Hearing Panel found that the Board proved, by a preponderance of the evidence, that Mr. Schuchardt violated RPC 1.1 (Competence) by seeking "spousal support" in the first sentence of a three-page "Motion for Custody Order" that never affirmatively asked for "custody". In making this finding, the Hearing Panel omitted the fact that Mr. Schuchardt's "Motion for Custody Order," albeit in the body and not the prayer for relief, affirmatively stated that "[t]he movant, Jamie McBryar, respectfully seeks custody of Hannah [McBryar]." So, while it is true that Mr. Schuchardt sought "spousal support" in a "Motion for Custody Order," which implicates RPC 1.1 (Competence), it is not accurate to state that "the body of the document never affirmatively requested the relief specified in its title."

Panel found that disbarment was the presumptive sanction because Mr. Schuchardt's rule violations were egregious and caused serious injury to Ms. McBryar. The Hearing Panel also considered Ms. Rubenfeld's testimony that Mr. Schuchardt's lack of diligence and failure to pursue discovery "seriously compromised Ms. McBryar's ability to obtain spousal support and custody of the child at issue." The Hearing Panel also addressed RPCs 1.3 and 1.4(a)–(b) in the context of Ms. Dunn's complaint. The Hearing Panel found that Mr. Schuchardt's failure to timely file a response to the conservatorship petition and failure to draft the response in accordance with Ms. Dunn's comments violated RPCs 1.3 and 1.4(a)–(b). The Hearing Panel found that a reprimand was the presumptive sanction.

Third, the Hearing Panel addressed RPC 1.16(d) (Terminating Representation). In the context of Ms. McBryar's complaint, the Hearing Panel found that Mr. Schuchardt's openly hostile and uncooperative conduct violated RPC 1.16 and caused serious injury and serious potential injury to Ms. McBryar. In the context of Mr. King's complaint, the Hearing Panel found that Mr. Schuchardt's failure to turn over Mr. King's client file, which "forc[ed] [his] attorney to subpoena the file[,]" also violated RPC 1.16. The Hearing Panel found that Mr. Schuchardt caused Mr. King serious potential harm and placed his own pecuniary interest in collecting unpaid fees over the interests of his client. Accordingly, the Hearing Panel found that disbarment was the presumptive sanction for these rule violations.

Fourth, the Hearing Panel addressed RPCs 4.4(a)(1) (Respect for the Rights of Third Persons) and (8.4) (Misconduct) in the context of Mr. Hirschorn's complaint. The Hearing Panel found that Mr. Schuchardt's multiple threats violated RPCs 4.4 and 8.4 and demonstrated a disregard for basic principles of fairness and respect for others. The Hearing Panel addressed the matters giving rise to the violations of RPC 8.4(c)–(d) in its Summary Judgment Order. For both complaints, the Hearing Panel determined that the presumptive sanction was disbarment. Additionally, the Hearing Panel found that Mr. Schuchardt's "explicit attempt to extract a quid pro quo" was incredibly destructive to the legal system. Accordingly, the Hearing Panel found disbarment to be the presumptive sanction.

The Hearing Panel also briefly addressed Mr. Schuchardt's violations of RPCs 4.4(a)(1) (Respect for the Rights of Third Persons) and 8.4 (Misconduct) in relation to Mr. King and Ms. Dunn's complaints. The Hearing Panel found that disbarment was the presumptive sanction for Mr. Schuchardt's conduct in both complaints.

To summarize, the Hearing Panel found that Mr. Schuchardt violated the following RPCs: 1.1 (Competence), 1.3 (Diligence), 1.4(a)–(c) (Communication), 1.5(b) (Fees), 1.7(a)(1) (Conflict of Interest: Current Clients), 1.16(d) (Declining or Terminating Representation), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal), 3.4(c) (Fairness to Opposing Party and Counsel), 4.2 (Communication with a Person Represented by Counsel), 4.4(a)(1) (Respect for the Rights of Third Persons), 8.1(a) (Bar

Admission and Disciplinary Matters), 8.2(a)(2) (Judicial and Legal Officials), and 8.4(a), (d) (Misconduct). This list includes the Hearing Panel's findings from both its Summary Judgment Order and Final Order. In total, the Hearing Panel found that Mr. Schuchardt committed forty-seven rule violations. Having found disbarment to be the presumptive sanction for ten instances of the forty-seven rule violations, the Hearing Panel then examined the following aggravating factors: past disciplinary offenses, dishonest/selfish motive, pattern of misconduct/multiple offenses, bad faith obstruction of disciplinary proceedings and submission of false evidence during the disciplinary process, refusal to acknowledge the wrongful nature of his conduct, vulnerability of victims, and substantial experience in the practice of law.

The Hearing Panel found that Mr. Schuchardt had a history of disciplinary offenses, including discipline enforced by then-Chief Judge Pamela Reeves of the United States District Court for the Eastern District of Tennessee and four other times by various courts. The Hearing Panel also found that Mr. Schuchardt had a dishonest or selfish motive, as he would often prioritize collecting his fees ahead of the interests of his clients like Ms. McBryar and Mr. King.

The Hearing Panel also found that Mr. Schuchardt's offenses reflected a "pattern of misconduct," as he committed a multitude of ethical violations throughout several complaints.[13] The Hearing Panel then found that Mr. Schuchardt engaged in bad faith obstruction of the disciplinary proceedings and submitted false evidence during the disciplinary process. For example, Mr. Schuchardt repeatedly claimed that Mr. Dustin Welsh was present during the conservatorship hearing, even after evidence upon evidence showed that was false. Moreover, during the disciplinary proceedings, Mr. Schuchardt "repeatedly . . . asserted fantastic and wholly unsupported claims of hiding evidence, bias, prejudice, criminal conduct, and conspiracy theories directed at . . . witnesses, other members of the bar, disciplinary counsel, and the Board itself." The Hearing Panel also found as an aggravating factor that Mr. Schuchardt refused to acknowledge the wrongful nature of his conduct. Instead, Mr. Schuchardt conducted a "campaign of character assassination with respect to each of [the] individuals" who filed complaints against him. The Hearing Panel found that all of these claims were made to "deflect attention from his own conduct" and manifested an unwillingness to acknowledge his own wrongdoing.

The Hearing Panel found as an aggravating factor that several of the complainants were vulnerable individuals. For example, Ms. McBryar did not have a college degree and had limited knowledge about the workings of the legal system. Ms. McBryar was also of modest financial means and "desperate for [Mr. Schuchardt's] help[.]" Similarly, Mr.

---

[13] In many cases, the same conduct can underlie both the "prior disciplinary offenses" and "pattern of misconduct" factors. *See, e.g.*, *Bd. of Pro. Resp. v. Daniel*, 549 S.W.3d 90, 103 (Tenn. 2018) (noting that "multiple instances of [misconduct] would underlie both the pattern of misconduct factor and multiple offenses factor").

King, who was facing serious criminal charges and Mr. Schuchardt's refusal to turn over the file "potentially severely hampered Mr. King and his counsel."

Finally, the Hearing Panel noted as an aggravating factor Mr. Schuchardt's "extensive experience in the practice of law." Mr. Schuchardt has practiced law for decades and, by his own account, "has had a long [and] distinguished career in the law."[14]

Mr. Schuchardt and the Board stipulated to a single mitigating factor, that three witnesses "would testify . . . that [Mr. Schuchardt] is a man of the highest level of competence and integrity in . . . unrelated matters." The Hearing Panel found no basis to depart from the presumptive sanction of disbarment based on the aggravating factors and sole mitigating factor. Accordingly, the Hearing Panel recommended disbarment. Mr. Schuchardt appealed to the Knox County Chancery Court.

## C.     Trial Court Proceedings

The Trial Court found no basis to reverse or modify the Hearing Panel's decision. The Trial Court undertook an extensive review of the Hearing Panel's Summary Judgment Order and Final Order. The Trial Court examined the factual allegations of all four complaints, the conclusions of law regarding the RPCs, and the propriety of the sanctions imposed by the Hearing Panel. Following this thorough assessment, the Trial Court "affirm[ed] the Hearing Panel's decision in all regards."

## II.     STANDARD OF REVIEW

This Court "is the final arbiter of the professional conduct of all lawyers practicing in Tennessee." *Gray v. Bd. of Pro. Resp.*, 710 S.W.3d 664, 673 (Tenn. 2025) (citing *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 612 (Tenn. 2010)). When reviewing attorney discipline appeals, we "seek[] to ensure that [disciplinary] rules are enforced in a manner that preserves both the integrity of the bar and the public trust in our system of justice." *Id.* at 674 (citation omitted).

Our system provides ample process before a court or administrative body enforces sanctions on an attorney. To begin, attorneys have the "right to an evidentiary hearing before a panel." *Id.* at 673 (citation omitted). Next, both the Board and the attorney have the right to appeal a hearing panel's decision to a circuit or chancery court. *Id.* (quoting Tenn. Sup. Ct. R. 9, § 33.1(b)). Finally, both parties have the right to appeal to this Court. *Id.* (citing Tenn. Sup. Ct. R. 9, § 33.1(d)).

---

[14] *See supra*, n. 1.

On appeal, we review "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel." *Id.* (quoting Tenn. Sup. Ct. R. 9, § 33.1(d)). We reverse or modify a decision below only when it is:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b).

When we find no grounds for reversal under subsections (1), (2), or (3), we must uphold a hearing panel's decision unless the decision was arbitrary or capricious, an abuse of discretion, a clearly unwarranted exercise of discretion, or unsupported by substantial and material evidence. *Bd. of Pro. Resp. v. Allison*, 284 S.W.3d 316, 322 (Tenn. 2009) (quotation omitted). "A hearing panel abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the complaining party." *Manookian v. Bd. of Pro. Resp.*, 685 S.W.3d 744, 777–78 (Tenn. 2024) (citation modified). A decision is supported by substantial and material evidence "if it furnishes a reasonably sound factual basis for the decision being reviewed." *Allison*, 284 S.W.3d at 322 (quoting *City of Memphis v. Civ. Serv. Comm'n of Memphis*, 216 S.W.3d 311, 316–17 (Tenn. 2007)).

Although we "do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of fact," we review questions of law de novo. *Maddux v. Bd. of Pro. Resp.*, 409 S.W.3d 613, 622 (Tenn. 2013) (citing *Bd. of Pro. Resp. v. Cowan*, 388 S.W.3d 264, 267 (Tenn. 2012)). We will uphold a sanction by the Hearing Panel when the evidence before the Hearing Panel "furnishes a reasonably sound factual basis for the decision being reviewed." *Sneed*, 301 S.W.3d at 612 (quotation omitted). Even if "reasonable minds can disagree" about the Hearing Panel's sanction, we will uphold it unless the decision is reversible under Tennessee Supreme Court Rule 9, Section 33.1. *Harris v. Bd. of Pro. Resp.*, 645 S.W.3d 125, 140 (Tenn. 2022) (quoting *Bd. of Pro. Resp. v. Sheppard*, 556 S.W.3d 139, 146 (Tenn. 2018)).

## III. ANALYSIS

From constitutional challenges to unconventional legal arguments, Mr. Schuchardt leaves no stone unturned. Mr. Schuchardt makes many disparate arguments. We categorize these arguments as Mr. Schuchardt did in the following manner: (A) due process challenges; (B) fair hearing challenges; and (C) challenges to disbarment as a sanction. As we explain below, several of Mr. Schuchardt's arguments are waived under our rules of appellate procedure. *See* Tenn. R. App. Proc. 27(a)(7)(A). Despite this waiver, we explain

why these arguments also fail on the merits. In addressing Mr. Schuchardt's arguments, we explain why the decisions below are supported by substantial and material evidence, and do not demonstrate any abuse of discretion. We conclude by upholding the sanction of disbarment against Mr. Schuchardt.

## A. Due Process Challenges

Mr. Schuchardt's first set of arguments contends that Tennessee's hearing panel system for attorney discipline violates due process. First, he claims that Tennessee's method for selecting hearing panel members does not comply with the Fourteenth Amendment's Due Process Clause. Next, he claims that the same selection method also violates the Equal Protection Clause of the Fourteenth Amendment. Finally, Mr. Schuchardt claims that, for various reasons, panel members have an improper interest in the outcome of attorney discipline cases, violating due process principles. We address each argument in turn.

### i. Due Process Clause

Mr. Schuchardt challenges Tennessee Supreme Court Rule 9, section 15.2(d), which permits the Board to select hearing panel members based on a list of available attorneys. Mr. Schuchardt claims that the Board, in selecting the panel, is afforded too much discretion, violating his due process rights. *See* U.S. Const. Amend. XIV, § 1 (prohibiting a state from depriving "any person of life, liberty, or property, without due process of law").

We previously addressed similar arguments. In *Hyman v. Board of Professional Responsibility*, Mr. Hyman "contend[ed] that the method for selecting hearing panel members deprive[d] him of his right to due process under the United States and Tennessee Constitutions." 437 S.W.3d 435, 445 (Tenn. 2014) (citation omitted). We explained how the procedural rights afforded to attorneys facing disciplinary proceedings were more than sufficient for Fourteenth Amendment Due Process purposes. *Id.* at 446. "Our current disciplinary framework provides adequate protection to attorneys who are accused of professional misconduct and is not 'in violation of constitutional or statutory provisions.'" *Id.* (quoting Tenn. Sup. Ct. R. 9, § 1.3); *see also Moncier v. Bd. of Pro. Resp.*, 406 S.W.3d 139, 156 (Tenn. 2013) (noting that Tennessee's disciplinary framework provides sufficient due process protections by giving lawyers notice and an opportunity to be heard, as well as the right to have counsel present, cross examine witnesses, and present evidence). Mr. Schuchardt's due process arguments are threadbare and provide no reason to disturb our prior case law. The hearing panel selection process did not violate Mr. Schuchardt's due process rights.

### ii. Equal Protection Clause

In three perfunctory paragraphs, Mr. Schuchardt also claims that Tennessee's method for selecting hearing panel members violates the Equal Protection Clause of the

U.S. Constitution and *Brown v. Board of Education*, 347 U.S. 483 (1954). Other than the citation to *Brown*, Mr. Schuchardt makes no attempt to relate that legal standard to his case.

Even when an issue "has been expressly raised," if "the brief fails to include an argument satisfying the requirements" of Tennessee Rule of Appellate Procedure 27, it will be deemed waived. *City of Memphis v. Edwards ex rel. Edwards*, No. W2022-00087-SC-R11-CV, 2023 WL 4414598, at *2 (Tenn. July 5, 2023) (per curiam); *see also Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (citing *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011); *Sneed*, 301 S.W.3d at 615) (same). So, when a party raises an issue but fails to "explain how the Panel or the trial court erred in resolving the issue," we consider it waived. *Sneed*, 301 S.W.3d at 614. It is not the responsibility of this Court to "scour[] the appellate record for any reversible error the [court below] may have committed." *Donovan v. Hastings*, 652 S.W.3d 1, 9 (Tenn. 2022) (quotation omitted). As here, where Mr. Schuchardt fails to draw a connection between the Equal Protection Clause or *Brown* to his case, we deem the argument waived. *See, e.g.*, *id.* (deeming issue waived when litigant failed to include "a sufficient argument"); *Sneed*, 301 S.W.3d at 614–15 (deeming issue waived when litigant failed to explain Hearing Panel's error); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (deeming issue waived when litigant's argument cited only one authority and did nothing to further advance a legal argument), *perm. app. denied* (Tenn. Apr. 12, 2012); *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000) ("[A]n issue is waived where it is simply raised without any argument regarding its merits." (citation modified)), *perm. app. denied* (Tenn. Feb. 26, 2001).

But putting waiver aside, we do not view this argument as substantively different from Mr. Schuchardt's claim that the Hearing Panel selection method violates the Due Process Clause to the Fourteenth Amendment to the U.S. Constitution. Accordingly, this argument fails for the same reasons discussed above.

### iii.     *Improper Interest of Hearing Panel Members*

Mr. Schuchardt next alleges that hearing panel members are "biased as a matter of law." Mr. Schuchardt makes several contentions in this regard, many of which overlap with his due process arguments. We will address each one in turn.

First, Mr. Schuchardt claims that because hearing panel members are members of the Board, the hearing panel members are *per se* biased in favor of the Board. According to Mr. Schuchardt, the hearing panel members are agents for the Board—a litigant in this matter. He goes on to contend that the members "owe their position on the panel – which is an honor – to the Chairman of the Board."

We addressed a similar argument in *Long v. Board of Professional Responsibility*, where an attorney facing discipline argued that it was improper for the Board to have investigatory, enforcement, and adjudicative processes all under the auspices of one

authority. 435 S.W.3d 174, 186 (Tenn. 2014). We determined that the attorney's due process rights were not denied "[b]ecause the investigatory/enforcement responsibilities and the adjudicative responsibilities are functionally separate within the Board." *Id.* at 187; *see also Moncier*, 406 S.W.3d at 163 ("[T]he Board's performance of [] overlapping functions does not, without more, establish bias or a constitutionally intolerable risk of actual bias."). We find no basis to modify our precedent.

Mr. Schuchardt's arguments also fail to account for this Court's rules and the Board's policies and procedures. First, hearing panels are comprised of attorneys who are members of the district committee. Tenn. Sup. Ct. R 9, § 6.1. The district committee members are appointed by the Tennessee Supreme Court, not the Chairman of the Board. Tenn. Sup. Ct. R. 9, § 6.1 (noting that the Tennessee Supreme Court appoints district committees). Further, the appointment of the hearing panel must comply with this Court's rules and the Board's policies. *See* Tenn. Sup. Ct. R. 9 § 15.2(d) ("The hearing panel shall be selected pursuant to written procedures approved by the Board."). Both this Court's rules and the Board's policies and procedures provide limitations for who may be appointed to a hearing panel. *See* Tenn. Sup. Ct. R. 9, § 6.5 ("A district committee member shall not take part in any matter in which a judge, similarly situated, would have to recuse himself or herself in accordance with Tenn. Sup. Ct. R. 10."); Policies and Rules of the Bd. of Pro. Resp. 2.2 (limiting hearing panel members to avoid conflicts of interest). Once assigned, any "hearing panel members are compelled to recuse themselves if 'a judge, similarly situated, would have to recuse himself or herself.'" *Hyman*, 437 S.W.3d at 446 (quoting Tenn. Sup. Ct. R. 9, § 6.5) (citing *Moncier*, 406 S.W.3d at 160).[15]

---

[15] In making this argument, Mr. Schuchardt failed to include in his brief the entirety of Policy 2.2, which provides:

> A. Following the service of the answer or upon failure to answer, the matter shall be assigned by the Board Chair or the Vice-Chair to a hearing panel. Rule 9, § 15.2(d). In assigning the members of the hearing panel, the Chair shall select them from the members of the district committee in the district in which the respondent practices law with consideration given to their availability and willingness to serve and to the number of panels on which the Hearing Committee Member currently serves. If there is an insufficient number of committee members in that district who are able to serve on the hearing panel, the Chair or Vice Chair may appoint one or more members from the district committee of an adjoining district to serve on the panel. Rule 9, § 15.2(d).
>
> B. District committee members from the same law firm or office may not serve together on the same hearing panel.
>
> C. District Committee Members may not participate in cases against respondent attorneys defended by members or associates of their law firm.
>
> D. District Committee Members are prohibited from serving on a hearing panel wherein a judge is a respondent and the member practices before the judge.

Like the attorney in *Long*, Mr. Schuchardt has failed to show how hearing panel members generally, or those specifically presiding over his case, are *per se* biased against attorneys facing discipline. *See generally Long*, 435 S.W.3d at 187–89. Accordingly, this argument fails.

Second, Mr. Schuchardt claims that because the panel members are attorneys whose licenses are regulated by the Board, counsel for the Board "can promise de facto immunity to the panel members in future ethics cases, if the panel members decide cases" in a particular way. Going one step further, Mr. Schuchardt claims that "[e]ven if no quid pro quo is offered or discussed, the panel members have an economic incentive to keep [the Board's] counsel happy, by handling cases the way [the Board] counsel wants to resolve the case."

While Mr. Schuchardt offers plenty by way of insinuation and innuendo, this argument is wholly without merit. The record is devoid of any evidence of untoward dealings between the Board and the Hearing Panel. Nothing in the record indicates that Hearing Panel members received immunity or pressure for certain results. Further, once again, Mr. Schuchardt's argument fails to recognize the rules of this Court. Panel members are appointed by this Court, not disciplinary counsel. *See* Tenn. Sup. Ct. R. 9, § 6.1. Also, any action by disciplinary counsel must be approved by district committee members who are appointed by this Court and not answerable to disciplinary counsel. *See* Tenn. Sup. Ct. R. 9, § 6.1. And neither members of the Board nor district committee members receive any payment for their services. Tenn. Sup. Ct. R. 9, § 4.4 ("Members shall receive no compensation for their services."). There is simply no incentive to "keep [the Board's] counsel happy." This argument fails.

Third, Mr. Schuchardt claims that hearing panel members have a pecuniary interest in the outcome of a case, denying him a fair and impartial arbitrator. Although Mr. Schuchardt discusses several United States Supreme Court opinions that prohibit judges from having a pecuniary interest that interferes with their role as neutral and detached arbiters, Mr. Schuchardt fails to show any connection between those cases and his. Mr. Schuchardt fails to argue, let alone provide evidence of, any pecuniary interest by the hearing panel members. As we discussed above, failure to include an argument results in the waiver of this issue. *See* Tenn. R. App. Proc. 27(a)(7); *see also supra* § A.ii. We also find this contention to be wholly without merit.

E. A District Committee Member may not be assigned to a hearing panel if a complaint is pending against the committee member.

F. A District Committee Member may continue to review Disciplinary Counsel's recommendations for dismissals, diversion and private informal admonitions regarding complaints while a complaint is pending against that Committee Member.

Policies and Rules of the Bd. of Pro. Resp. 2.2.

Finally, Mr. Schuchardt claims that the Board is filing ethics cases for improper purposes. In support of this argument, Mr. Schuchardt claims that attorneys in similar situations have alleged that the Board pursues ethics complaints in retaliation for protected speech. However, the record contains zero evidence—not even an insinuation—that the Board brought these charges as retaliation against Mr. Schucardt. The record is similarly devoid of any evidence or allegation of protected speech. This argument is wholly irrelevant and also fails.

For these reasons, we reject Mr. Schuchardt's claim that the hearing panel members are *per se* biased.

## B.    Fair Hearing Challenges

Mr. Schuchardt raises eight arguments related to the fairness of his disciplinary process. First, Mr. Schuchardt claims that the Hearing Panel denied him discovery on material issues of fact. Second, Mr. Schuchardt contends that the rule delivered in *Brady v. Maryland* should apply in his case. In his third, fourth, and fifth arguments, Mr. Schuchardt raises challenges to the Hearing Panel's grant of summary judgment and findings on the merits. We find that these three arguments relate to the sufficiency of the evidence against him. Sixth, Mr. Schuchardt claims that the Hearing Panel erred by refusing to allow Mr. Schuchardt to call certain witnesses to testify as to mitigating evidence. Seventh, Mr. Schuchardt argues that this Court erred by temporarily suspending him without notice and an opportunity to be heard. Finally, Mr. Schuchardt argues that the Hearing Panel erred by failing to consolidate another disciplinary matter against Mr. Schuchardt with those discussed in this opinion. We address these arguments in turn and explain why each fails.

### i.    Denial of Discovery

Mr. Schuchardt argues that the Hearing Panel prevented him from conducting discovery on material issues of fact. This argument stems from Ms. Dunn's case. Specifically, Mr. Schuchardt claims that he was not allowed to depose Mr. Dustin Welsh—the autistic child at issue in the conservatorship matter—Mr. Dustin Welsh's brother, or his school personnel regarding his whereabouts the day of the Chancery Court hearing.

In the disciplinary proceedings related to this matter, Mr. Schuchardt claimed that Mr. Dustin Welsh was present during the conservatorship hearing. But "every other witness present at the hearing with personal knowledge, including two members of the Bar, testified that Dustin Welsh was not present and did not testify, and the Court's Order contemporaneously approved by [Mr. Schuchardt] reflected this." The Hearing Panel prevented Mr. Schuchardt from deposing Mr. Dustin Welsh or the others on this issue. However, the Panel allowed Mr. Schuchardt to obtain attendance records for the child and

would re-visit the issue if the records indicated that the child was not in school the day of the hearing. School attendance records, however, showed that Mr. Dustin Welsh was present at school on the day of the hearing. Mr. Schuchardt admitted that he "was apparently mistaken."

Because it concerns a discovery dispute, we review the Hearing Panel's decision for abuse of discretion. *Walwyn v. Bd. of Pro. Resp.*, 481 S.W.3d 151, 165 (Tenn. 2015). We find no such abuse here. The Hearing Panel allowed Mr. Schuchardt to obtain school attendance records to determine whether Mr. Dustin Welsh was at school on the day of the hearing. Mr. Schuchardt did not seek any other discovery or contend that he still needed these depositions after school records showed that Mr. Dustin Welsh was in school on the date of the hearing. More importantly, Mr. Schuchardt fails to show how the appearance of Mr. Dustin Welsh at the Chancery Court hearing has any relevance to the merits of the disciplinary complaints against him, and we can see none. We see no abuse of the Hearing Panel's discretion on this discovery issue.

### ii.    *Brady v. Maryland*

Mr. Schuchardt argues that he is entitled to dismissal because the Hearing Panel failed to comply with *Brady v. Maryland*. In *Brady*, the United States Supreme Court held that a criminal prosecutor's failure to provide a defendant with exculpatory evidence violated due process. 373 U.S. 83, 87 (1963). Mr. Schuchardt claims that *Brady* should apply here because attorney disciplinary matters are "quasi-criminal," a term the United States Supreme Court has used in describing attorney discipline cases. *In re Ruffalo*, 390 U.S. 544, 551 (1968). However, Mr. Schuchardt fails to identify what, if any, evidence the Board withheld from him in violation of *Brady*. Accordingly, this argument is waived. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2003) ("A skeletal argument that is really nothing more than an assertion will not properly preserve a claim." (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam))).

Even still, as this Court previously held, attorney discipline proceedings are not criminal proceedings. *See, e.g.*, *Green v. Bd. of Pro. Resp.*, 567 S.W.3d 700, 715 (Tenn. 2019) ("Disciplinary hearings are not criminal trials and do not include all the due process protections that apply in criminal trials." (citing *Moncier*, 406 S.W.3d at 157)); *Walwyn*, 481 S.W.3d at 171 ("[A]ttorney disciplinary proceedings are not criminal proceedings." (quoting *Long*, 435 S.W.3d at 186)).[16] Because attorney discipline cases are not criminal proceedings, the full panoply of protections afforded in criminal proceedings are often inapplicable in attorney discipline cases. *See, e.g.*, *In re Sitton*, 618 S.W.3d 288, 295 (Tenn. 2021) ("Attorney disciplinary proceedings are not criminal proceedings in which there is a

---

[16] Other courts have reached similar holdings. *See Matter of Roberts*, 877 S.E.2d 266, 270 (Ga. 2022) (declining to apply *Brady* in attorney discipline case); *Smigelski v. Dubois*, 100 A.3d 954, 967 (Conn. App. Ct. 2014) (same).

presumption of innocence." (citations omitted)); *Mabry v. Bd. of Pro. Resp.*, 458 S.W.3d 900, 907 (Tenn. 2014) ("[T]here is no Sixth Amendment right to effective assistance of counsel in an attorney disciplinary proceeding." (citation omitted)).  Like the presumption of innocence in *Sitton* and the right to effective assistance of counsel in *Mabry*, the protections of *Brady v. Maryland* simply do not apply in Mr. Schuchardt's case.  Setting aside the waiver of this issue, Mr. Schuchardt's argument is meritless.

### iii.      Sufficiency of the Evidence

Mr. Schuchardt next makes three different arguments that all essentially challenge the sufficiency of the evidence against him.  First, Mr. Schuchardt claims that the Hearing Panel failed to comply with the plain meaning of the law on thirty-nine issues.  Second, Mr. Schuchardt claims that the Hearing Panel's conclusions are not based on evidence.  Third, Mr. Schuchardt claims that the Hearing Panel granted summary judgment despite thirty issues of material fact.

First, we find all of these arguments waived.  These arguments consist largely of unsupported claims of legal error or disputes of fact without identifying either the error or the fact in support.  Each of these arguments reference lengthy charts that list the allegations made against him and purported citations to the applicable law via citations to an appendix.[17]

Mr. Schuchardt relies on this Court to make his arguments for him.  *See Dunkel*, 927 F.2d at 956 ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also Bd. of Pro. Resp. v. Justice*, 577 S.W.3d 908, 924 n.16 (Tenn. 2019) (declining to consider certain arguments that are "too outlandish to dignify with discussion" or "absurd").  As we explained above, our rules of appellate procedure require litigants to "includ[e] the reasons why [their] contentions require appellate relief, with citations to the authorities and appropriate references to the record."  Tenn. R. App. Proc. 27(a)(7)(A).  Accordingly, because Mr. Schuchardt fails to make a legal argument regarding these issues, we deem them waived.  *See, e.g.*, *Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 491 (Tenn. 2021) (deeming issue waived when party's brief "merely mention[s] potential 'constitutional problems' without properly explaining or giving adequate legal support for such claims" (citation modified)); *Lovlace v. Copley*, 418 S.W.3d 1, 33 n. 17 (Tenn. 2013)

---

[17] It appears that the "applicable law" section of Mr. Schuchardt's charts references two appendices filed with his principal brief.  But his principal brief, including the attached appendices, fail to comply with our rules of appellate procedure.  First, his "applicable law" section references scattered portions of the record, which do not constitute "citations to the authorities."  Tenn. R. App. Proc. 27(a)(7)(A).   Second, it seems that Mr. Schuchardt used an appendix to incorporate arguments he made in courts below by reference, in an apparent attempt to circumvent our word limit for principal briefs.  Tenn. R. App. Proc. 30(e).  Although our rules contemplate the use of an appendix to a party's brief, a party cannot use an appendix to circumvent this Court's word-count requirement.  *See* Tenn. R. App. Proc. 28(a) (allowing litigants to file an appendix).

(deeming issue waived when party's brief failed to "provide any argument or citation to the record regarding [an] issue in the argument section of their brief" (citation modified)).

Nevertheless, we have soldiered on to ensure that the record contains substantial and material evidence of the RPC violations found by the Hearing Panel. Upon review of the voluminous record spanning thousands of pages, as illustrated by the summary of the facts above, we find substantial and material evidence to support the Hearing Panel's findings that Mr. Schuchardt violated numerous RPCs. Accordingly, we find more than enough evidence of Mr. Schuchardt's misconduct. Mr. Schuchardt's arguments regarding the sufficiency of the evidence fail.

*iv.*      *Refusal of Witnesses*

Additionally, Mr. Schuchardt takes issue with the Hearing Panel's refusal to allow him to call witnesses to testify regarding the quality of his legal services. According to Mr. Schuchardt, this was reversible error. We disagree.

At his disciplinary hearing, Mr. Schuchardt and the Board stipulated that three witnesses would have testified that Mr. Schuchardt represented them competently and with integrity. Because of the stipulation, and the fact that the three proposed witnesses had no personal knowledge of the disciplinary charges against Mr. Schuchardt in this case, the Hearing Panel excluded them from testifying before the Panel but "consider[ed] what their testimony would have been for purposes of mitigation." The Hearing Panel allowed Mr. Schuchardt to make offers of proof regarding the three witnesses. However, Mr. Schuchardt declined, waiving the issue for review by failing to make a proper record. An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 297–98 (Tenn. Ct. App. 1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 61 S.W. 766, 766 (Tenn. 1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833–34 (Tenn. Ct. App. 1997).

We recognize that a hearing panel, like a trial court, has discretion in overseeing its proceedings. *See Hyder v. Bd. of Pro. Resp.*, 696 S.W.3d 532, 542 (Tenn. 2024) ("Rulings on the introduction of evidence are usually within the discretion of the trial judge and will

not be reversed except for an abuse of that discretion." (citation modified)). We discern no abuse of discretion in the Hearing Panel's refusal to allow these three witnesses to testify. Moreover, we see no prejudice to Mr. Schuchardt given the agreed stipulation of the parties as to what these witnesses would have testified about and the Hearing Panel's consideration of this information. Accordingly, this argument fails.

### v. Substantial Threat of Harm

On September 21, 2022, this Court issued an order temporarily suspending Mr. Schuchardt from the practice of law after finding that Mr. Schuchardt posed a threat of substantial harm to the public. *See* Tenn. Sup. Ct. R. 9, Sec. 12.3. Mr. Schuchardt claims that he did not receive notice or the opportunity for a hearing in connection with the temporary suspension. This is false. Mr. Schuchardt received notice and had an opportunity to dissolve the petition. In fact, he took advantage of this opportunity to be heard by filing a Petition for Dissolution of the temporary suspension. In his petition, he continued to make baseless allegations that showed he "pose[d] a threat of substantial harm to the public." *Id*. Accordingly, this argument fails.

### vi. Failure to Consolidate

Mr. Schuchardt faces other disciplinary actions unrelated to the complaints before us now. He argues that failure to consolidate those complaints with this matter was error. Mr. Schuchardt provides no rule or case law that mandates consolidation. Indeed, other than insinuations of misconduct by others in the other pending matters, Mr. Schuchardt provides no argument as to how those cases and this matter are linked. Accordingly, this argument fails.

### C. Disbarment

We turn now to Mr. Schuchardt's challenges to the sanction of disbarment. When "determin[ing] the appropriate sanction for attorney misconduct, a hearing panel must consider the applicable ABA standards." *Gray*, 710 S.W.3d at 681 (citing Tenn. Sup. Ct. R. 9, § 15.4(a)). After identifying "the presumptive sanction under the ABA [s]tandards," a hearing panel considers whether to increase or decrease that presumptive sanction based on aggravating and mitigating factors. *Id.* (quoting *Dunlap v. Bd. of Pro. Resp.*, 595 S.W.3d 593, 612 (Tenn. 2020)).

Here, the Hearing Panel did just that. It first applied ABA standards 4.41, 4.42, 4.43 4.51, 4.52, 4.53, 4.54, 6.11, 7.1, and 7.2 in determining an appropriate sanction. Under some of those standards, disbarment was the presumptive sanction. Under others, a lesser penalty like suspension or a reprimand was the presumptive sanction. Applying three of these standards to multiple violations, the Hearing Panel found that disbarment was the

presumptive sanction.[18] Next, the Hearing Panel found the following aggravating factors applicable: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) pattern of misconduct/multiple offenses; (d) bad faith obstruction of disciplinary proceeding/submission of false evidence during disciplinary process; (e) refusal to acknowledge wrongful nature of conduct; (f) vulnerability of victim; and (g) substantial experience in the practice of law. Finally, the Hearing Panel considered mitigating factors and found one mitigating factor applicable: that three of Mr. Schuchardt's former clients, each without any knowledge of the facts of this case, would testify to his high level of competence as a lawyer and personal integrity.

Mr. Schuchardt raises four specific issues with the sanction of disbarment. We will address each in turn. First, Mr. Schuchardt claims that the Board failed to establish that he violated any duties as counsel and as such the sanction is inappropriate. As explained above, there is ample evidence in the record to support multiple findings of misconduct. Thus, this issue is without merit.

Second, Mr. Schuchardt contends that there is no evidence of damages as required to support disbarment. Astonishingly, he claims that he is the only one damaged. This is false. The complainants discussed above show how Mr. Schuchardt's conduct caused both serious injury and serious potential injury. Ms. McBryar had to find counsel at the final hour, and had her case delayed for months. Mr. Schuchardt's threats to and harassment of Mr. Hirschorn and his clients damaged the administration of justice. Mr. King was forced to subpoena his own client file, causing delay and requiring Mr. King to pay for the subpoena. We also note that, during the proceedings of Ms. Dunn's complaint, Mr. Schuchardt made several false statements to the Hearing Panel and declined to retract them. Accordingly, this argument fails.

Third, Mr. Schuchardt contends that a sanction of disbarment is inconsistent with other Tennessee disciplinary cases. While Mr. Schuchardt cites to three different disciplinary cases, he makes no attempt to explain how those cases are similar to his.[19] He summarily concludes that "Tennessee does not provide for disbarment in the instances before the Court." We disagree.

---

[18] As we discussed above, the Hearing Panel made two factual findings that, in our view, require added context and detail, as these facts were incomplete as stated by the Hearing Panel. *See supra*, n. 11 & 12. However, the outcome for Mr. Schuchardt does not change, because the Hearing Panel recommended a reprimand, not disbarment, for Mr. Schuchardt's violations of RPC 1.1 related to these two violations. Because evidence in the record conflicts with the Hearing Panel's findings we disregard them. Removing these violations from consideration does not affect the Hearing Panel's recommended sanction of disbarment.

[19] Mr. Schuchardt references the following cases: *Sallee v. Board of Professional Responsibility*, 469 S.W.3d 18 (Tenn. 2015); *Hyman*, 437 S.W.3d 435; and *Flowers v. Board of Professional Responsibility*, 314 S.W.3d 882 (Tenn. 2010).

Finally, Mr. Schuchardt contends that the Hearing Panel failed to consider mitigating factors. Specifically, Mr. Schuchardt claims that the following factors should be found as mitigating circumstances: (1) his lack of disciplinary record; (2) that he did not have a dishonest or selfish motive;[20] and (3) his reputation and character, evidence of which allegedly includes a book he was writing about currency, his pro bono work, that he is active in politics, that he prevented a private college from closing, and that he is active in his community.[21]

With regard to Mr. Schuchardt's disciplinary record and motive, the Hearing Panel clearly considered these factors. In fact, it found two of them to be aggravating factors. The Hearing Panel found that Mr. Schuchardt had been disciplined once by the Eastern District of Tennessee, twice by the Western District of Pennsylvania, once by the Middle District of Tennessee, and once by the Pennsylvania Supreme Court. Accordingly, the Hearing Panel properly held this to be an aggravating factor and not a mitigating one.

Additionally, the Hearing Panel considered Mr. Schuchardt's argument that he had no dishonest or selfish motive. It affirmatively held that Mr. Schuchardt put his personal financial motives ahead of his clients, causing serious injury or serious potential injury, and in other matters sought to gain personal advantage in his own cases. The record supports this finding.

Finally, Mr. Schuchardt alleges that the Hearing Panel failed to consider his character and reputation as a mitigating factor. This is false. The Hearing Panel "accept[ed] [Mr. Schuchardt's] proffered evidence" that three individuals would testify that Mr. Schuchardt "is a man of the highest level of competence and integrity . . . as establishing the mitigating factor of Mr. Schuchardt's 'character' and 'reputation.'"[22] Although the Hearing Panel's Final Order did not discuss all of the arguments Mr. Schuchardt made regarding the mitigating factor of character/reputation, the Hearing Panel credited the evidence presented and found Mr. Schuchardt's "character" and "reputation" as a mitigating factor. The fact that the Hearing Panel's Final Order did not discuss at length each of Mr. Schuchardt's arguments as to this mitigating factor is unavailing. Consequently, we find that the Hearing Panel appropriately considered mitigating factors.

---

[20] Demonstrating his lack of remorse, in support of this point, Mr. Schuchardt contends that he "was victimized by all of the complaining parties in this case."

[21] Like many of his other arguments, Mr. Schuchardt fails to comply with our rules in this part of his brief—which lacks any reference to the record as to where he presented these facts or made these arguments. *See* Tenn. R. App. Proc. 27(a)(7)(A) (requiring briefs to include appropriate references to the record).

[22] However, despite the "Hearing Panel credit[ing] this evidence and find[ing] the existence of this mitigating factor," the Hearing Panel noted that it was of limited value because the three proffered witnesses had "no first-hand knowledge of the substantive facts in [Mr. Schuchardt's] case."

The Hearing Panel aptly observed how these proceedings have "dealt with fundamental duties of competence, diligence, trust, honesty, and professionalism that every attorney owes to his or her clients, to members of the bar, and to the judicial system." Considering the entire record in this matter, the only appropriate sanction is disbarment.

## IV. CONCLUSION

The Hearing Panel's decision was supported by substantial and material evidence and was neither arbitrary and capricious nor an abuse of discretion. We therefore affirm the judgment of the Chancery Court and the decision of the Hearing Panel to disbar Mr. Schuchardt. The costs of this appeal are taxed to Mr. Schuchardt, for which execution may issue if necessary.

_____
MARY L. WAGNER, JUSTICE